1  Scott Edward Cole, Esq. (S.B. #160744)
   Jeremy A. Graham, Esq. (S.B. #234166)
2  **SCOTT COLE & ASSOCIATES, APC**
   1970 Broadway, Ninth Floor
3  Oakland, California 94612
   Telephone: (510) 891-9800
4  Facsimile:  (510) 891-7030
   Email:  scole@scalaw.com
5  Email:  jgraham@scalaw.com
   Web:    www.scalaw.com
6
   Attorneys for Representative Plaintiffs
7  and the Plaintiff Class

8                UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11 | FRANCISCO FLORES and GIULIA ) | **Case No. 3:15-cv-03423-WHO**
   | FERRARIS, individually, and on )
12 | behalf of all others similarly situated, ) | **CLASS ACTION**
                                    )
13 |              Plaintiffs,        ) | **PLAINTIFFS' NOTICE OF MOTION AND**
                                    ) | **MOTION FOR AN ORDER:**
14 | vs.                             )
                                    ) | **(1)   GRANTING FINAL APPROVAL OF**
15 |                                 ) |       **THE CLASS ACTION**
   | MEDIFIT CORPORATE SERVICES,     ) |       **SETTLEMENT AGREEMENT;**
16 | INC., and DOES 1 through 100,   ) | **(2)   AWARDING REIMBURSEMENT OF**
   | inclusive,                      ) |       **SETTLEMENT ADMINISTRATION**
17 |                                 ) |       **EXPENSES; AND**
   |              Defendant.         ) | **(3)   ENTERING JUDGMENT OF**
18 |                                 ) |       **DISMISSAL WITH PREJUDICE**
                                    )
19                                  ) | Date:  November 9, 2016
                                    ) | Time:  2:00 p.m.
20                                  ) | Room:  Courtroom 2, 17th Floor
                                    ) | Judge: Honorable William H. Orrick
21

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL.: (510) 891-9800

# NOTICE OF MOTION

**TO DEFENDANT MEDIFIT CORPORATE SERVICES, INC. AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on November 9, 2016, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable William H. Orrick in Room 2 of this Court, 17th Floor, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Representative Plaintiffs Francisco Flores and Giulia Ferraris will, and hereby do, move the Court for an Order: (1) granting final approval of the parties' class action settlement agreement; (2) awarding reimbursement of claims administration expenses; and (3) entering Judgment of dismissal with prejudice.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Jeremy A. Graham, Esq. and exhibits thereto, the complete files and records of this action, and any further briefing and arguments of counsel.

Dated: October 5, 2016

**SCOTT COLE & ASSOCIATES, APC**

By: /s/ Jeremy A. Graham
Jeremy A. Graham, Esq.
Attorneys for the Representative Plaintiffs
and the Plaintiff Class

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL.: (510) 891-9800

**TABLE OF CONTENTS**

I. INTRODUCTION……………………………………………………………………….1

II. PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS……………...2

III. SUMMARY OF SETTLEMENT TERMS…………………………………………….4

IV. THE SETTLEMENT MERITS FINAL APPROVAL……………………………….....5

    A. STANDARD FOR APPROVAL…………………………………………………….5

    B. THE PERTINENT FACTORS FAVOR FINAL APPROVAL……………….6

        1. The Risk, Expense, Complexity, and Likely Duration of Continued Litigation Favor Final Approval……………………………………..6

        2. The Amount Offered in Settlement Favors Final Approval………..…8

        3. The Extent of Discovery Completed and the Stage of the Proceedings Support the Settlement………………………………………………..…9

        4. The Experience and Views of Class Counsel Favor Final Approval....9

        5. The Class Members' Reaction Favors Final Approval………………10

V. THE PARTIES FULLY IMPLEMENTED THE COURT-ORDERED NOTICE PROGRAM AND THE CLAIMS ADMINISTRATOR'S PAYMENT SHOULD BE APPROVED………………………………………………………………………………10

VI. FINAL CLASS CERTIFICATION IS APPROPRIATE…………………………….11

VII. CONCLUSION…………………………………………………………………………12

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL.: (510) 891-9800

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor*,
   521 U.S. (1997) .................................................................................................... 11, 12

*Barcia v. Contain-A-Way, Inc.*,
   2009 U.S. Dist. LEXIS 17118 (S.D. Cal. Mar. 6, 2009) ........................................ 10

*Boyd v. Bechtel Corp.*,
   485 F.Supp. (N.D. Cal. 1979) ................................................................................ 9

*Brinker Restaurant Corp. v. Superior Court*,
   53 Cal.4th 1004 (Cal. 2012) .................................................................................. 7

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .............................................................................. 8

*Ferguson v. Lieff, Cabraser, Heimann & Bernstein*,
   30 Cal. 4th (2003) .................................................................................................. 7

*Franklin v. Kaypro Corp.*,
   884 F.2d (9th Cir. 1989) .................................................................................... 5, 7

*Hanlon v. Chrysler Corp.*,
   150 F.3d (9th Cir. 1998) .................................................................................. 6, 11

*In re General Motors Corp. Pick-up Truck Fuel Tank Products Liability Litig.*,
   55 F.3d (3rd Cir. 1995) .......................................................................................... 7

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. (1950) .................................................................................................... 11

*Munoz v. BCI Coca-Cola Bottling Co. of L.A.*,
   186 Cal. App. 4th (2010) ...................................................................................... 6

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. (C.D. Cal. 2004) ................................................................................ 10

*Officers for Justice v. Civil Service Comm'n*,
   688 F.2d (9th Cir. 1982) ...................................................................................... 6

*Young v. Katz*,
   447 F.2d (5th Cir. 1971) ...................................................................................... 6

**Labor Code**

California Labor Code
   §203 ........................................................................................................................ 8

California Labor Code
   §226 ........................................................................................................................ 8

**Federal Rules of Civil Procedure**

Fed. R. Civ. P.
   23 ............................................................................................................. 6, 10, 11

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL.: (510) 891-9800

**Manual for Complex Litigation**

Manual for Complex Litigation
   (4th ed. 2004) § 21.632 ................................................................................................................ 11

## MEMORANDUM OF POINTS AND AUTHORITIES

**I. INTRODUCTION**

On or about June 28, 2016, Plaintiffs Francisco Flores and Giulia Ferraris ("Plaintiffs") and Defendant MediFit Corporate Services, Inc. ("Defendant" or "Medifit") executed a settlement agreement ("Settlement")[1] which encompasses all claims asserted by the Representative Plaintiffs on behalf of themselves and a class of 1,152 non-exempt group exercise instructors, personal trainers, and swim instructors (collectively "Fitness Instructors") who were employed in California by Defendant since June 16, 2011.

In the operative Complaint, Plaintiff alleges that Defendant unlawfully denied its non-exempt Fitness Instructors payment for all wages due, statutorily mandated meal and rest periods, and reimbursement for business expenses. Plaintiffs sought various forms of relief, not only for themselves, but for all other similarly situated Medifit Fitness Instructors employees in California during the class period.

Now, Plaintiffs have agreed to settle their and the Class Members' claims in exchange for Defendant's agreement to pay a gross settlement amount of $1,300,000, which includes the cost of administering the Settlement, a payment to the California Labor and Workforce Development Agency ("LWDA") to settle claims under the Private Attorney Generals Act ("PAGA"),[2] enhancement awards to the Representative Plaintiffs, and attorneys' fees and costs.

The Settlement reflects a great result for the Class, satisfies all the criteria for final settlement approval under Federal law, and falls well within the range of what constitutes a reasonable compromise for claims of this nature and size. The notice plan and claims process authorized by this Court in its July 22, 2016, Order preliminarily approving the Settlement has been successfully implemented. The positive response of the Class Members to the Settlement – including **no objections** and **no opt-outs** – provides strong support for final settlement approval. For these

---

[1]  A true and correct copy of the fully executed settlement agreement, entitled "Medifit Corporate Services, Inc. 'Wage and Hour' Class Action Settlement Agreement and Release of Claims" is attached as Exhibit "A" to the Declaration of Jeremy A. Graham, Esq. in Support of Plaintiffs' Motion for Final Approval ("Graham Decl."), filed concurrently herewith. Unless otherwise noted, all exhibits cited herein are attached to the Graham Decl.
[2]  California Labor Code section 2698, *et seq.*

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL.: (510) 891-9800

reasons, as set forth more fully below, the Court should grant final approval to this class action settlement. Plaintiffs seek attorneys' fees, reimbursement of litigation costs, and enhancement awards by separate motion.

## II. PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS

Plaintiff Francisco Flores ("Plaintiff") filed this case on June 16, 2015, in San Mateo Superior Court on behalf of himself and all other similarly situated personal trainers and group exercise instructors employed by Defendant in California since June 16, 2011. Plaintiff alleged that Defendant had a consistent policy of, *inter alia*, (1) permitting, encouraging, and/or requiring its Fitness Instructors to work "off-the-clock," without compensation therefore, (2) permitting, encouraging, and/or requiring its Fitness Instructors to perform reported hours of work without compensation therefore, (3) failing to reimburse its Fitness Instructors for business expenses related to the operations of Defendant, (4) willfully failing to pay compensation (including unpaid overtime) in a prompt and timely manner to the Representative Plaintiff and/or those Class Members whose employment with Defendant terminated, (5) willfully failing to provide the Representative Plaintiff and Class Members with accurate semi-monthly itemized wage statements of the total number of hours each of them worked and the applicable deductions during each pay period, and (6) willfully failing to provide meal periods and/or rest periods to Representative Plaintiff and/or Class Members.[3]

The basis for these claims is that under Defendant's "session rate" compensation scheme, Class Members are only paid for the amount of time spent providing actual fitness instruction and are not compensated for myriad tasks they must perform before and after fitness instruction such as, without limitation, researching and writing fitness routines, rehearsing choreography, attending continuing education and meetings, obtaining certifications, soliciting clients, etc. Plaintiff also alleged Defendant failed to reimburse him and Class Members for necessary business expenses including music and other materials for fitness classes, continuing education and certification attendance fees and travel expenses.[4]

---

[3] Graham Decl. ¶ 3.
[4] Graham Decl. ¶ 4.

On September 15, 2015 Defendant filed a Rule 12(c) Motion for Judgment on the Pleadings, arguing the Complaint failed to meet minimum pleading standards. The parties met and conferred, on October 13, 2015, the parties stipulated that Defendant would withdraw its motion and Plaintiff would file a more detailed First Amended Complaint ("FAC"). Plaintiff filed his FAC on October 19, 2015. Subsequently, on November 17, 2015, Plaintiff propounded his first set of document requests and interrogatories to which Defendant responded on January 13, 2016. Defendant also produced over 400 pages or responsive documents.[5]

Towards the end of 2015, the parties agreed to attempt to resolve the case through mediation. The parties agreed to utilize the services of well-known and respected mediator Antonio Piazza due to his experience mediating wage & hour class actions. In anticipation of the mediation session, Class Counsel requested that Defendant informally produce certain documents and data points which would allow Plaintiff to better evaluate the merits and value of the case. These included various company policy documents as well as metrics regarding the Plaintiff Class, including the number of Class Members, the number of fitness instruction sessions provided during the class period, and the session rate paid to Class Members for those sessions. Prior to mediation, Class Counsel also reviewed documents produced by Plaintiff Flores and conducted detailed interviews of several putative Class Members with regard to their working conditions and the claims asserted against Defendant.[6]

Through this formal and informal discovery exchange and Class Counsel's investigative efforts, Plaintiff obtained ample information to evaluate the propriety of class certification, the likelihood of prevailing on the merits, and any potential recovery due to the Class. These investigative and discovery efforts also apprised Class Counsel of the significant potential litigation risks facing Plaintiff and the Class Members.[7]

The parties reached settlement only after extensive, hard-fought adversarial negotiations. Prior to the mediation, Plaintiff submitted a thorough brief summarizing the evidence obtained and

---

[5] Graham Decl. ¶ 5.
[6] Graham Decl. ¶ 6.
[7] Graham Decl. ¶ 7.

analyzed by Class Counsel, the state of applicable law, and a comprehensive, class-wide damages analysis. On February 8, 2016, the parties attended a full-day mediation session with Mr. Piazza at the San Francisco offices of Mediated Negotiations. With Mr. Piazza's assistance, the parties reached an agreement in principle to resolve the litigation. Nonetheless, the parties only agreed to final settlement terms after several months of further negotiations. By May 2, 2016, all parties had executed the Settlement.[8]

As part of the Settlement, the parties agreed that Plaintiff Flores would file a Second Amended Complaint ("2AC") adding Giulia Ferraris as an additional named plaintiff to bring a Private Attorneys General Act claim on behalf of similarly situated Aggrieved Employees. The 2AC also alleges a claim under the Fair Labor Standards Act.[9]

Class Counsel is of the considered opinion that this Settlement is well within the range of reasonableness and is decidedly in the best interest of the Class Members in light of all known facts, including the risk of significant delay, defenses asserted by Defendant, and potential appellate issues.[10]

## III. SUMMARY OF SETTLEMENT TERMS

The material terms of settlement are highlighted as follows:

- Defendant will pay $1,300,000 ("Gross Settlement Fund" or "GSF");
- The Net Settlement Fund ("NSF") will be calculated by deducting the following:
  - Court-approved award for attorneys' fees, up to 25% of the GSF;
  - Court-approved reimbursement of attorneys' actual costs, up to $20,000;
  - Enhancements Awards to the Class Representatives, $4,500 for Plaintiff Flores and $1,500 for Plaintiff Ferraris;
  - Payment for release of PAGA claims in the amount of $5,000;[11]
  - Costs of settlement administration, not expected to be more than $20,500.[12]

---

[8] Graham Decl. ¶ 8.
[9] Graham Decl. ¶ 9.
[10] Graham Decl. ¶ 10.
[11] 75% of which will be paid to the California Labor and Workforce Development Agency ("LWDA") and 25% back to the NSF Exhibit "A," Settlement ¶ 33(e).
[12] Exhibit "A," Settlement ¶ 17.

The *entire* Net Settlement Fund will be automatically paid to Settlement Class Members who do not opt out.[13] The parties have agreed, and the Court has preliminarily granted approval, that Scott Cole & Associates, APC ("SCA") will serve as Class Counsel[14] and Rust Consulting, Inc. will serve as Settlement Administrator. Any unapproved amount of attorneys' fees, costs, or settlement administration costs shall be awarded to a *cy pres* beneficiary.[15]

Each member of the California Class will be entitled to receive a pro rata portion of 95% of the NSF and each member of the FLSA class will be entitled to a pro rata portion of 5% of the NSF. Settlement awards will be calculated based upon the number of pay periods worked during the respective Settlement Periods, divided by the total number of pay periods worked by all Class Members during the respective Settlement Periods. The Settlement Administrator will calculate the number of pay periods worked by Class Members, the amount to be paid per pay period, and the Individual Settlement Share that each Settlement Class Member is eligible to receive.[16] Settlement checks will be valid for 180 days and any uncashed funds remaining thereafter will be tendered to a *cy pres* beneficiary.[17]

## IV. THE SETTLEMENT MERITS FINAL APPROVAL

### A. STANDARD FOR APPROVAL

Federal law strongly favors and encourages settlements, especially in class actions. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989), *cert. denied*, 498 U.S. 890 (1990) ("[I]t hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits.") (internal quotation marks and citation omitted). When reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

---

[13] Exhibit "A," Settlement ¶¶ 10-12.
[14] Exhibit "A," Settlement ¶ 3.
[15] Exhibit "A," Settlement ¶ 60.
[16] Exhibit "A," Settlement ¶ 33(c)-(d).
[17] Exhibit "A," Settlement ¶ 51.

parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

To approve a proposed settlement of a class action under Rule 23(e) of the Federal Rules of Civil Procedure, the Court must find the proposed settlement "fair, adequate and reasonable," recognizing that "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Although Rule 23 provides no precise formula for making this determination, the Ninth Circuit has identified several factors to be considered. These factors include: (1) the strength of the case; (2) the size of the claims and amount offered to settle them; (3) the risk, expense, complexity and likely duration of further litigation; (4) the stage of the proceedings, i.e., whether the plaintiffs and their counsel have conducted sufficient discovery to make an informed decision on settlement; (5) whether the class has been fairly and adequately represented during settlement negotiations by experienced counsel; and (6) the reaction of the class to the proposed settlement. *See Id.* at 1026 (noting that the relative importance of each of these factors will depend on the circumstances of each case); *see also Schwarzer, et al.*, *Cal. Practice Guide: Federal Civil Procedure Before Trial* (The Rutter Group) § 10:849 (rev. #1 2008) (listing factors). Here, all of the relevant factors weigh strongly in favor of final approval.

**B.     THE PERTINENT FACTORS FAVOR FINAL APPROVAL**

    **1.     The Risk, Expense, Complexity, and Likely Duration of Continued Litigation Favor Final Approval**

First, the Court should weigh the benefits of the Settlement against the expense and delay involved in achieving an equivalent, or potentially more, or less, favorable result at trial. *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971); *Munoz v. BCI Coca-Cola Bottling Co. of L.A.*, 186 Cal. App. 4th 399 (2010) (quoting *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 129 (2008) ("[T]he trial court may not determine the adequacy of a class action settlement 'without independently satisfying itself that the consideration being received for the release of the class

members' claims is reasonable in light of the strengths and weaknesses of the claims and the risks of the particular litigation.'").

The policy under California law that favors and encourages settlement of class actions and other complex cases is applicable here. California jurists recognize "an overriding public policy favoring settlement of class actions." *Ferguson v. Lieff, Cabraser, Heimann & Bernstein*, 30 Cal. 4th 1037, 1054 (2003) (Kennard, J., concurring) (citing *Franklin*, 884 F.2d at 1229 ("[P]ublic policy favor[s] the compromise and settlement of disputes")); *see also In re General Motors Corp. Pick-up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 805 (3rd Cir. 1995). The alternative to a class action – i.e., individual litigation – could tax private and judicial resources over a period of years. Moreover, and alternatively, given the relatively modest amount of damages each Class Member allegedly incurred, such litigation would be cost-prohibitive even for those with the finances, sophistication, and tenacity to secure individual legal representation, leaving the allegedly harmed employees with no recourse and allowing the employer's alleged violations to continue unremedied and unabated.

This Settlement, on the other hand, provides *all* Class Members, regardless of their means, or the size of their individual claims, the opportunity for a monetary recovery in a prompt and efficient manner, without the risk of the Court denying class certification and the recovery of nothing at all. The Settlement represents a fair compromise of the issues in this case, based on the following risks:

- The uncertainty of class certification, including the possible result of <u>no recovery</u> whatsoever for the unnamed Class Members;
- Defendant's likely arguments that Plaintiffs' claims are not typical of the Class and that they are inadequate class representatives;
- Defendant's likely argument that the expense reimbursement claims raise individualized issues, citing lack of documentation and variances in expenses;
- The relative lack of written evidence for the Class Members' missed meal and rest periods and uncompensated time spent performing pre- and post-session duties, other than their declarations;
- Even if the class certification is granted, the possibility that the Court would agree with Defendant's likely argument that employers need only make breaks available, and have no obligation to ensure that breaks were actually taken. *See Brinker Restaurant Corp. v. Superior Court,* 53 Cal.4th 1004 (2012);
- Defendant's likely argument that, even if found liable for unpaid wages, meal period violations and/or failure to pay overtime compensation, the Class lacked sufficient evidence to legally establish their damages;

- Defendant's likely argument that Plaintiffs' estimate of the maximum damages is vastly overstated and does not comport with the *actual* damages suffered by Class Members;

- The possibility this Court might find that California Labor Code § 203 requires a "willful" failure to pay wages and the difficulties Plaintiffs face in establishing that "willful" factor;

- Defendant's likely argument that Plaintiffs could not show that there was an "injury" entitling the Class to recovery under California Labor Code § 226; and

- The possibility that, as in any litigation, the Class could proceed all the way to trial and be victorious but still find themselves unable to actually enforce their judgment owing to Defendant's insolvency or other unforeseen intervening circumstances.[18]

Finally, as this Court knows, "the law wisely favors settlement," particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Staton*, 327 F.3d at 952 ("rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk"). These concerns apply here, where without the class action procedure many of the Class Members would not be able to find representation and would not obtain relief. The Settlement guarantees all Class Members the opportunity for monetary recovery, commensurate with the harms alleged, promptly and efficiently.

### 2.     The Amount Offered in Settlement Favors Final Approval

The $1,300,000 value of the GSF provides for fair compensation for the wage and hour claims herein, accruing to the benefit of a relatively modest class of 1,152 members. *See West v. Circle K Stores, Inc.*, 2006 U.S. Dist. LEXIS 76558, *15 (E.D. Cal. Oct. 20, 2006). The settlement takes into consideration the risk factors discussed above, and represents a reasonable portion of Defendant's maximum exposure, discounted by the risks of losing certification and/or liability, the expense of further litigation and the benefit of providing Class Members with a guaranteed recovery in the very near future.

---

[18] Graham Decl. ¶ 22.

### 3. The Extent of Discovery Completed and the Stage of the Proceedings Support the Settlement

Courts also consider the extent of completed discovery and the stage of the proceedings in determining the fairness, adequacy and reasonableness of a settlement. *See Weeks v. Kellogg Co.*, 2011 U.S. Dist. LEXIS 155472, *55-56 (C.D. Cal. Nov. 23, 2011); *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 103525, *8 (S.D. Cal. Dec. 2, 2008). Here, Class Counsel interviewed numerous Class Members, in addition to the named Plaintiffs, regarding the claims alleged herein and carefully reviewed hundreds of pages of Medifit's policies and procedures, including the employee handbook, policy and procedure manual, and myriad internal memoranda. In total, Defendant produced over 400 pages of documentary evidence.[19] Additionally, Defendant informally produced essential class data points prior to the mediation session.[20] The parties had a "clear view of the strengths and weaknesses of their cases" at mediation, and the settlement amount and terms were reached based on the parties' informed analysis of the strengths and weaknesses of this case. *Bellows*, 2008 U.S. Dist. LEXIS 103525 at *8 (internal punctuation omitted).

### 4. The Experience and Views of Class Counsel Favor Final Approval

Class Counsel possesses extensive knowledge and expertise of the legal issues affecting the Class, is very aware of the attendant risks of class action litigation, and is otherwise well-suited to evaluate the Settlement.[21] The endorsement of qualified and well informed counsel of a settlement as fair, adequate and reasonable is entitled to significant weight. *See Bellows*, 2008 U.S. Dist. LEXIS 103525 at *8 (citing *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.")); *West*, 2006 U.S. Dist. LEXIS 76558 at *17-18 (in class action settlements, the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with similar cases). Based on its decades of experience in wage and hour, and other, class

---

[19] Graham Decl. ¶ 5.
[20] Graham Decl. ¶ 6.
[21] Exhibit "C," SCA's Professional Resume; Graham Decl. ¶¶ 24-28.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

actions, Class Counsel supports the Settlement as fair, adequate, reasonable and, most importantly, in the best interests of the Class.

### 5. The Class Members' Reaction Favors Final Approval

Here, the Class Members' responses to the preliminarily approved Settlement support its approval. The notice was provided in a manner designed to give the best notice practicable, in accordance with the terms of the Settlement Agreement, and fully protected the due process rights of the Class Members. **Not a single Class Member has opted out and *not a single objection was made to the Settlement.*** [22] This "provides further support for final approval of the Proposed Settlement . . . [and] *raises a strong presumption* that the terms of a proposed class settlement action [sic] are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (emphasis added); *Barcia v. Contain-A-Way, Inc.*, 2009 U.S. Dist. LEXIS 17118, *12 (S.D. Cal. Mar. 6, 2009) ("the absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement."). In fact, "[t]he lack of objections to the settlement is perhaps the most significant factor weighing in favor of settlement." *West*, 2006 U.S. Dist. LEXIS 76558 at *19-20. After full disclosure of the Settlement terms, the Class Members' response to the Settlement fully supports the conclusion that it is fair, adequate and reasonable. After all relevant factors are duly considered, the Settlement merits final approval by this Court.

### V. THE PARTIES FULLY IMPLEMENTED THE COURT-ORDERED NOTICE PROGRAM AND THE CLAIMS ADMINISTRATOR'S PAYMENT SHOULD BE APPROVED

Applicable statutory and case law vests the Court with broad discretion in fashioning an appropriate notice program. Fed. R. Civ. P. 23(e)(1). "The class notice must be (1) reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections and (2) must satisfy the content requirements of Rule 23(c)(2)(B)." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). In connection with its

---

[22] Exhibit "B," Declaration of Chris Pikus for Rust Consulting, Inc. ("Pikus Decl.") ¶ 12.

Order granting preliminary approval of the Settlement, this Court approved the notice program and form of notice, both of which have now been fully implemented.[23]

For the complete notice and administration project, including the future processing of claim forms, the Claims Administrator is requesting payment of $20,500, which includes all work to conclude its duties and responsibilities pursuant to the Settlement. This amount is reasonable given the thoroughness of the services provided and results obtained. Therefore, this Court should award the Claims Administrator the full amount requested, to be paid out of the GSF as called for in the Settlement.

## VI. FINAL CLASS CERTIFICATION IS APPROPRIATE

In connection with final approval, the Court should reaffirm its preliminary finding that the proposed Settlement Class is a proper class for settlement purposes. *See* Manual for Complex Litigation (4th ed. 2004) § 21.632; *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). The Court can certify a settlement class where the Court has determined that the proposed class and proposed class representatives meet the four prerequisites in Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one of the three requirements of Rule 23(b). *See also Hanlon*, 150 F.3d at 1019. Certification of a class action for monetary relief requires a showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In certifying a settlement class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D).

In the Court's Order preliminarily approving the Settlement, this Court concluded that the requirements of settlement class certification under Rule 23 had been met. The parties' disagreement as to the propriety of a contested litigation class in this case does not preclude certification of the

---

[23] *See, generally,* Exhibit "B," Pikus Decl.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL.: (510) 891-9800

-11-
Memorandum of Points & Authorities in Support of Plaintiffs' Motion for Final Settlement Approval

Settlement Class as "there [will] be no trial." *Amchem*, 521 U.S. at 620. Consequently, the Court should now finally certify the proposed Settlement Class.

**VII.   CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval of the Settlement, certify the proposed Settlement Class, award reimbursement of claims administration expenses in the amount of $20,500, and enter Judgment of dismissal with prejudice.

Dated: October 5, 2016

**SCOTT COLE & ASSOCIATES, APC**

By:   /s/ Jeremy A. Graham
Jeremy A. Graham, Esq.
Attorneys for the Representative Plaintiffs
and the Plaintiff Class

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL.: (510) 891-9800

-12-
Memorandum of Points & Authorities in Support of Plaintiffs' Motion for Final Settlement Approval