1   Scott Edward Cole, Esq. (S.B. #160744)
    Jeremy A. Graham, Esq. (S.B. #234166)
2   **SCOTT COLE & ASSOCIATES, APC**
    1970 Broadway, Ninth Floor
3   Oakland, California 94612
    Telephone: (510) 891-9800
4   Facsimile:  (510) 891-7030
    Email:   scole@scalaw.com
5   Email:   jgraham@scalaw.com
    Web:      www.scalaw.com
6
    Attorneys for Representative Plaintiffs
7   and the Plaintiff Class

8               **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11  FRANCISCO FLORES and GIULIA      )   **Case No. 3:15-cv-03423-WHO**
    FERRARIS, individually, and on   )
12  behalf of all others similarly situated,  )   **CLASS ACTION**
                                     )
13                    Plaintiffs,    )   **DECLARATION OF JEREMY A. GRAHAM,**
                                     )   **ESQ. IN SUPPORT OF PLAINTIFFS'**
14  vs.                              )   **MOTION FOR AN ORDER:**
                                     )
15                                   )   **(1)    GRANTING FINAL APPROVAL OF**
    MEDIFIT CORPORATE SERVICES,      )   **THE CLASS ACTION**
16  INC., and DOES 1 through 100,    )   **SETTLEMENT AGREEMENT;**
    inclusive,                       )   **(2)    AWARDING REIMBURSEMENT OF**
17                                   )   **SETTLEMENT ADMINISTRATION**
                      Defendant.     )   **EXPENSES; AND**
18                                   )   **(3)    ENTERING JUDGMENT OF**
                                     )   **DISMISSAL WITH PREJUDICE**
19                                   )
                                     )   **Date:    November 9, 2016**
20                                   )   **Time:    2:00 p.m.**
                                     )   **Room:    Courtroom 2, 17th Floor**
21  _____ )   **Judge:   Honorable William H. Orrick**

22

23  I, Jeremy A. Graham, do hereby declare as follows:

24          1.      I am an attorney-at-law, licensed to practice in all jurisdictions of this State, and I am

25  an Associate Attorney with the law offices of Scott Cole & Associates, APC ("SCA" or "Class

26  Counsel") attorneys-of-record for the Plaintiff class in the above-entitled proceeding.

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

2.      I make these statements based on personal knowledge, would so testify if called as a witness at trial, and have personal knowledge of the foregoing. I make this declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement.

**PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS**

3.      Plaintiff Francisco Flores ("Plaintiff") filed this case on June 16, 2015, in San Mateo Superior Court on behalf of himself and all other similarly situated personal trainers and group exercise instructors employed by Defendant in California since June 16, 2011. Plaintiff alleged that Defendant had a consistent policy of, *inter alia*, (1) permitting, encouraging, and/or requiring its Fitness Instructors to work "off-the-clock," without compensation therefore, (2) permitting, encouraging, and/or requiring its Fitness Instructors to perform reported hours of work without compensation therefore, (3) failing to reimburse its Fitness Instructors for business expenses related to the operations of Defendant, (4) willfully failing to pay compensation (including unpaid overtime) in a prompt and timely manner to the Representative Plaintiff and/or those Class Members whose employment with Defendant terminated, (5) willfully failing to provide the Representative Plaintiff and Class Members with accurate semi-monthly itemized wage statements of the total number of hours each of them worked and the applicable deductions during each pay period, and (6) willfully failing to provide meal periods and/or rest periods to Representative Plaintiff and/or Class Members.

4.      The basis for these claims is that under Defendant's "session rate" compensation scheme, Class Members are only paid for the amount of time spent providing actual fitness instruction and are not compensated for myriad tasks they must perform before and after fitness instruction such as, without limitation, researching and writing fitness routines, rehearsing choreography, attending continuing education and meetings, obtaining certifications, soliciting clients, etc. Plaintiff also alleged Defendant failed to reimburse him and Class Members for necessary business expenses including music and other materials for fitness classes, continuing education and certification attendance fees and travel expenses.

5.      On September 15, 2015 Defendant filed a Rule 12(c) Motion for Judgment on the Pleadings, arguing the Complaint failed to meet minimum pleading standards. The parties met and conferred, on October 13, 2015, the parties stipulated that Defendant would withdraw its motion and

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1   Plaintiff would file a more detailed First Amended Complaint ("FAC"). Plaintiff filed his FAC on

2   October 19, 2015. Subsequently, on November 17, 2015, Plaintiff propounded his first set of

3   document requests and interrogatories to which Defendant responded on January 13, 2016.

4   Defendant also produced over 400 pages or responsive documents.

5        6.    Towards the end of 2015, the parties agreed to attempt to resolve the case through

6   mediation. The parties agreed to utilize the services of well-known and respected mediator Antonio

7   Piazza due to his experience mediating wage & hour class actions. In anticipation of the mediation

8   session, Class Counsel requested that Defendant informally produce certain documents and data

9   points which would allow Plaintiff to better evaluate the merits and value of the case. These included

10  various company policy documents as well as metrics regarding the Plaintiff Class, including the

11  number of Class Members, the number of fitness instruction sessions provided during the class

12  period, and the session rate paid to Class Members for those sessions. Prior to mediation, Class

13  Counsel also reviewed documents produced by Plaintiff Flores and conducted detailed interviews of

14  several putative Class Members with regard to their working conditions and the claims asserted

15  against Defendant.

16       7.    Through this formal and informal discovery exchange and Class Counsel's

17  investigative efforts, Plaintiff obtained ample information to evaluate the propriety of class

18  certification, the likelihood of prevailing on the merits, and any potential recovery due to the Class.

19  These investigative and discovery efforts also apprised Class Counsel of the significant potential

20  litigation risks facing Plaintiff and the Class Members.

21       8.    The parties reached settlement only after extensive, hard-fought adversarial

22  negotiations. Prior to the mediation, Plaintiff submitted a thorough brief summarizing the evidence

23  obtained and analyzed by Class Counsel, the state of applicable law, and a comprehensive, class-

24  wide damages analysis. On February 8, 2016, the parties attended a full-day mediation session with

25  Mr. Piazza at the San Francisco offices of Mediated Negotiations. With Mr. Piazza's assistance, the

26  parties reached an agreement in principle to resolve the litigation. Nonetheless, the parties only

27  agreed to final settlement terms after several months of further negotiations. By May 2, 2016, all

28  parties had executed the Settlement.

9.    As part of the Settlement, the parties agreed that Plaintiff Flores would file a Second Amended Complaint ("2AC") adding Giulia Ferraris as an additional named plaintiff to bring a Private Attorneys General Act claim on behalf of similarly situated Aggrieved Employees. The 2AC also alleges a claim under the Fair Labor Standards Act.

10.    Class Counsel is of the considered opinion that this Settlement is well within the range of reasonableness and is decidedly in the best interest of the Class Members in light of all known facts, including the risk of significant delay, defenses asserted by Defendant, and potential appellate issues.

### FAIRNESS AND ADEQUACY OF THE PROPOSED SETTLEMENT

11.    Prior to the filing of the Complaint, SCA's attorneys interviewed Plaintiff Flores regarding his employment with Medifit. During those interviews, Mr. Flores described, among other things, his day-to-day job, average hours worked, timekeeping practices, and his estimate as to the approximate number of other Medifit fitness instructors subject to the same policies and practices. Mr. Flores also produced many documents related to this employment with Medifit.

12.    After careful review of the documents provided by Mr. Flores and consideration of the information he provided, SCA determined that he had claims typical of the Class Members and would be an adequate representative plaintiff in this action. SCA also thoroughly vetted Plaintiff Giulia Ferraris before adding her into the action as an additional named plaintiff with standing to assert a PAGA claim.

13.    It is my professional opinion that differences between the Class Members' duties are so negligible, and their working conditions are so similar, that all of their claims can and should be adjudicated in a single class action.

14.    SCA is not aware of any antagonism or conflict of interest between the Class Representative and the putative class. In fact, Plaintiffs have been involved in this case and have been in routine contact with Class Counsel and assisted with the prosecution of the case.

15.    SCA investigated Defendant's business practices and the working conditions of Class Members, including interviews of witnesses with personal knowledge about Defendant's organization and the review of documents produced informally by Defendant for mediation.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

Defendant ultimately produced over 400 pages of documentary evidence. SCA reviewed documents reflecting Defendant's policies and procedures pertaining to the challenged conduct such as employee handbook, policy documents, internal emails and memoranda, etc.

16.   Defendant also provided various data points regarding the composition of the class, which Class Counsel carefully reviewed, analyzed and categorized in advance of mediation. Additionally, Plaintiffs remained in constant contact with Class Counsel and answered questions regarding Defendant's business operations, history, policies and procedures, and acted as a means by which Class Counsel could confirm the accuracy of the data Defendant provided during the course of discovery and before and during settlement negotiations.

17.   This information enabled the parties to properly and intelligently value the Class Members' claims for purposes of settlement, assess the risks of continued litigation, and otherwise determine whether the Settlement is fair and reasonable. As a result of this and other efforts, it is clear that the discovery process has been involved and thorough, placing Plaintiffs and their counsel in an excellent position to evaluate the merits and value of this lawsuit.

## COUNSEL'S ANALYSIS OF THE MAXIMUM POTENTIAL VALUE AND MERITS OF THE CLAIMS

18.   The primary (largest) financial remedies available to the Class stem from the claims for unpaid wages for time spent on pre- and post-session duties and unreimbursed business expenses. The following outlines counsel's estimation of the maximum potential value of these claims and the basis for the derivation thereof.

19.   The data provided by Defendant in advance of mediation indicated that the then current 1,071 Class Members earned an average wage of $39 per session. Based on interviews with Plaintiff and several putative Class Members, counsel estimated that Class Members spent an average of 1.88 hours on uncompensated pre- and post-session duties per session taught. Accordingly, counsel estimated Class Members are owed $73.32 per fitness instruction session.

20.   Defendant's data also indicated the Class Members taught a total of approximately 185,983 fitness instruction sessions. Thus, counsel estimates the Class' claim for unpaid wages in connection with those sessions is valued at $13,636,273.

21.    Counsel also estimated the amount of unreimbursed business expenses incurred by the Class Members to be approximately $8.94 per week, based on interviews with Plaintiff and Class Members. Defendant's data indicated there were approximately 96,390 class period workweeks. Accordingly, counsel estimates the Class' claim for unreimbursed business expenses to be worth approximately $861,726.

## COUNSEL'S ANALYSIS OF SETTLEMENT

22.    Class Counsel evaluated the Settlement by weighing the maximum damages available to the Class Members on their statutory break, unpaid overtime, and expense reimbursement claims against the relevant risk factors. These risks included:

- The uncertainty of class certification, including the possible result of <u>no recovery</u> whatsoever for the unnamed Class Members;

- Defendant's likely arguments that Plaintiffs' claims are not typical of the Class and that they are inadequate class representatives;

- Defendant's likely argument that the expense reimbursement claims raise individualized issues, citing lack of documentation and variances in expenses;

- The relative lack of written evidence for the Class Members' missed meal and rest periods and uncompensated time spent performing pre- and post-session duties, other than their declarations;

- Even if the class certification is granted, the possibility that the Court would agree with Defendant's likely argument that employers need only make breaks available and have no obligation to ensure that breaks were actually taken. *See Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012);

- Defendant's likely argument that, even if found liable for unpaid wages, meal period violations and/or failure to pay overtime compensation, the Class lacked sufficient evidence to legally establish their damages;

- Defendant's likely argument that Plaintiffs' estimate of the maximum damages is vastly overstated and does not comport with the *actual* damages suffered by Class Members;

- The possibility this Court might find that California Labor Code § 203 requires a "willful" failure to pay wages and the difficulties Plaintiffs face in establishing that "willful" factor;

- Defendant's likely argument that Plaintiffs could not show that there was an "injury" entitling the Class to recovery under California Labor Code § 226; and

- The possibility that, as in any litigation, the Class could proceed all the way to trial and be victorious but still find themselves unable to actually enforce their ultimate judgment owing to Defendant's ultimate insolvency or other unforeseen intervening circumstances.

23.    Class Counsel's opinion that this Settlement represents a fair, adequate, and reasonable result for the Class is based on its weighting of the maximum potential recovery against

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

the strengths of the defenses to class certification, liability, and damages as outlined in this declaration. Based thereon, Class Counsel reached the conclusion that the Settlement constitutes a reasonable recovery for the Class.

**CLASS COUNSEL**

24.     SCA is devoted almost exclusively to the prosecution of wage and hour class action matters such as this. Indeed, in its twenty-plus year history, SCA has prosecuted scores of wage and hour class actions, some of which are identified in the firm's professional resume attached hereto as **Exhibit "C."** Most of these cases involved some or all of the same legal issues as are presented in the current action against Medifit.

25.     In recent years, SCA has uncovered recurring wage and hour abuses in the fitness club industry and developed a significant caseload in that area as well as corresponding insight into how to build the best possible wage and hour case in a non-exempt fitness instructor case, such as here.

26.     As a law firm devoted to prosecuting wage and hour class actions, we have made presentations at professional seminars, written articles on some of the legal issues in dispute in this litigation, and remain in regular contact with other wage and hour practitioners who deal with unpaid expense and meal/rest period claims, many of whom have consulted with and/or retained us to provide expert services regarding these topics. SCA has diverse and extensive experience from which to draw upon to evaluate the settlement potential of the cases we prosecute, including this one.

27.     Since the firm was founded in 1992, SCA has devoted itself primarily to prosecuting employment law matters and, since 2000, almost exclusively to class actions. In that time, the firm has litigated a number of wage and hour class actions, and was one of the first California firms to devote itself so heavily to this area of practice. In that time, the firm has litigated a substantial number of wage and hour class actions dealing with the disputed issues herein. SCA's attorneys regularly serve as guest speakers at wage and hour conferences and have written articles on wage and hour class action issues.

28.     SCA served as co-counsel in connection with the largest single meal and rest period-only settlement in the nation's history (*Corrn/Despres v. United Parcel Service, Inc., et al.*, Case

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

No. 3:03-cv-02001 TEH (N.D. Cal. 2007) ($87 million settlement award)) and has successfully achieved certification in many difficult scenarios. *See, e.g., Kurihara v. Best Buy Co., Inc.*, Case No. 3:06-cv-01884 MHP (N.D. Cal. 2007) (obtaining certification for a class of over 52,000 current and former store employees); *Torres v. ABC Security*, Case No. RG04158744 (Alameda Court Superior Court 2006) (obtaining certification of a class of over 1,600 security guards working at scores of different work sites). SCA's reputation and expertise contributed significantly to the relatively speedy favorable recovery here, in light of the employer's believable commitment to pursue this case through class certification and trial. Because of its experience and almost exclusive dedication to prosecuting wage and hour class actions, the quality of representation by SCA's attorneys likely far exceeds the quality of representation that would have been provided by attorneys billing at a similar hourly rate, but without such experience.

## **EXHIBITS**

29.    Attached hereto as **Exhibit "A"** is a true and correct copy of the parties' fully executed settlement agreement, entitled "Medifit Corporate Services, Inc. 'Wage and Hour' Class Action Settlement Agreement and Release of Claims."

30.    Attached hereto as **Exhibit "B"** is a true and correct copy of the Declaration of Chris Pikus for Rust Consulting, Inc. Mr. Pikus is employed by Rust Consulting, Inc., the Court-appointed Settlement Administrator.

31.    Attached hereto as **Exhibit "C"** is a true and correct copy of SCA's professional resume which outlines some of the firm's experience with class/complex litigation.

I declare, under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 5th of October, 2016 at Oakland, California.

_/s/ Jeremy A. Graham_____
Jeremy A. Graham, Esq.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

# EXHIBIT A

<u>**MEDIFIT CORPORATE SERVICES, INC. "WAGE AND HOUR"**</u>
<u>**CLASS ACTION SETTLEMENT AGREEMENT**</u>
<u>**AND RELEASE OF CLAIMS**</u>

This Settlement Agreement and Release of Claims ("Settlement Agreement") is entered into by and between Defendant MediFit Corporate Services, Inc. ("Defendant" and/or "MediFit") and putative Representative Plaintiffs Francisco Flores and Giulia Ferraris ("Representative Plaintiffs," "Class Representatives" and/or "Plaintiffs") on behalf of themselves individually, and, with Court approval, on behalf of all members of the putative "Plaintiff Class" as described herein.

<u>**DEFINITIONS**</u>

1.      "Action" shall mean that the case of *Flores v. Medifit Corporate Services*, U.S. District Court, Northern District of California Case No. 3:15-cv-03423 WHO.

2.      "California Settlement Period" is June 16, 2011 through the date the Court finally approves this Settlement Agreement, or December 31, 2016, whichever occurs first.

3.      "Class Counsel" is Matthew R. Bainer, Esq. of Scott Cole & Associates, APC.

4.      "Class Notice" means the Class Notice, in a form substantially similar to the attached **Exhibit B**, subject to Court approval, and incorporated by reference into this Settlement Agreement.

5.      "Defendant's Counsel" is Brian Ashe, Michael Wahlander and Elizabeth MacGregor of Seyfarth Shaw LLP.

6.      The "Effective Date," is the date upon which both of the following have occurred:  (i) Final approval of the Settlement Agreement is granted by the United States District Court, Northern District of California, or other court assuming jurisdiction of this matter, and (ii) the Court's Judgment approving the Settlement becomes Final.

7.      "Final" shall mean the latest of:  (i) if there is an appeal of the Court's Judgment, the date the Judgment is affirmed on appeal, the date of dismissal of such appeal, or the expiration of the time to file a petition for writ of certiorari to the United States Supreme Court, or, (ii) if a petition for writ of certiorari is filed, the date of denial of the petition for writ of certiorari, or the date the Judgment is affirmed pursuant to such petition; or (iii) if no appeal is filed, the expiration date of the time for filing or noticing any appeal of the Judgment.

8.      "FLSA Fund" means five percent (5%) of the Net Settlement Fund.

9.     "FLSA Settlement Period" is June 16, 2012 through the date the Court finally approves this Settlement Agreement.

10.    "Gross Settlement Fund" refers to the total amount of One-Million Three-Hundred Thousand Dollars ($1,300,000), and no more, that Defendant will make available for payment, in its entirety, pursuant to this Settlement Agreement.

11.    "Net Settlement Fund" shall be calculated by deducting approved (a) Class Counsel's attorneys' fees and litigation costs, (b) the enhancement awards to the Representative Plaintiffs, (c) the payment to the California Labor & Workforce Development Agency ("LWDA") for release of claims under the Private Attorneys General Act ("PAGA") under Labor Code §§ 2699, *et seq.*, (d) the fees and expenses of the Settlement Administrator, and (e) all payroll taxes other than Defendant's portion of payroll taxes, from the Gross Settlement Fund.

12.    The entire Net Settlement Fund will be distributed to all members of the Plaintiff Class who do not opt-out or to the *cy pres* beneficiaries to be appointed by the Parties in accordance with the terms described below.  All such members of the Plaintiff Class who do not opt-out shall be bound by the terms of this Settlement Agreement, including all of its waivers and releases. Members of the Plaintiff Class will not be required to submit claim forms in order to claim their share of the Net Settlement Fund. There will be no reversion of the Net Settlement Fund to Defendant.

13.    "Parties" refer to the Class Representatives, the Plaintiff Class, and Defendant, collectively.

14.    "Plaintiff Class" comprises the following two classes alleged in the Second Amended Complaint:

> California Class: All persons who worked in California for Defendant, or its entity MediFit Community Services, LLC, at any point since June 16, 2011 as a group exercise instructor, personal trainer, or swim instructor.

> FLSA Class: All persons who worked in California for Defendant, or its entity MediFit Community Services, LLC, at any point since June 16, 2012 as a group exercise instructor, personal trainer, or swim instructor.

15.    The "Second Amended Complaint" is the same document attached to this Settlement Agreement as Exhibit C .

16.    "Settlement Class Members" and/or "Settlement Class" comprises all members of the California and FLSA Class who do not timely submit a valid opt-out form consistent with the process as described herein.

17.    "Settlement Administrator" refers to the third party company responsible for administering the Settlement. The Parties will obtain bids from various such companies for the administration of this Settlement and the Parties will jointly select the most cost efficient bidder. The Settlement Administrator Expenses paid to the Settlement Administrator are not expected to be more than Twenty Thousand, Five Hundred Dollars ($20,500).

18.    "Settlement Administration Expenses" are those expenses incurred by the Settlement Administrator in effectuating the Settlement.

## BACKGROUND

19.    This Settlement Agreement affects claims of the Plaintiff Class arising during the California and FLSA Settlement Periods alleged in the Second Amended Complaint. Plaintiffs allege that Defendant violated wage and hour laws and seek, on each Plaintiff's own behalf, and on behalf of the Plaintiff Class, unpaid wages and interest thereon, penalties, liquidated damages, injunctive and other equitable relief, and reasonable attorneys' fees and costs, under, *inter alia*, Title 8 of the California Code of Regulations, Business & Professions Code §§ 17200, *et seq.*, various Industrial Welfare Commission Wage Order(s), California Code of Civil Procedure §1021.5, and various provisions of the California Labor Code.

20.    Defendant denies that it violated the law in any manner as to the Plaintiff Class or otherwise. Nothing contained herein, nor the consummation of this Settlement Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing by Defendant.

21.    For settlement purposes only, the operative First Amended Complaint shall be amended by the Second Amended Complaint as part of the preliminary approval of this Settlement Agreement. A new plaintiff is named (namely, Giulia Ferraris), federal wage claims and all available Private Attorneys General Act ("PAGA") claims are asserted. Two conditions of the preliminary approval shall be (a) the Court shall Order the filing of the Second Amended Complaint and (b) the Court shall also Order that

the First Amended Complaint shall be re-filed as the Third Amended Complaint in the event this settlement does not become Final.

22.     The Parties intend to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising during the California and FLSA Settlement Periods alleged by the Plaintiff Class in the Second Amended Complaint as well as known and unknown claims which arise out of, or could have been brought based on, the specific factual and legal allegations contained in the Second Amended Complaint, including, but not limited to claims for unpaid wages, unpaid overtime, minimum wage violations, record-keeping violations, inaccurate wage statements, paycheck violations, meal period and rest period violations, "waiting time" penalties, and failure to reimburse business expenses, which arose between June 16, 2011 and the date the Court finally approves this Settlement Agreement.

23.     The Parties intend that this Settlement Agreement shall include a full and complete settlement and release, as described herein, and which includes in its effect all of Defendant's present and former parent companies, subsidiaries, shareholders, officers, directors, attorneys, insurers, and affiliates.

24.     Class Counsel represent that they have conducted a sufficiently thorough investigation into the claims of the Plaintiff Class. Based on their own independent investigation and evaluation and all known facts and circumstances, including the risk of significant defenses asserted by Defendant, Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interest of the Plaintiff Class.

25.     The Parties agree to cooperate and take all steps necessary and appropriate to obtain preliminary and final approval of this Settlement and to effectuate all aspects of this Settlement Agreement.

## CERTIFICATION OF THE PLAINTIFF CLASS
## FOR SETTLEMENT PURPOSES ONLY

26.     For settlement purposes only, the Parties agree that the Plaintiff Class shall be certified. This Settlement Agreement is contingent upon the approval and certification by the Court of the Plaintiff Class for settlement purposes only. Defendant does not waive, and instead expressly reserves, its rights to challenge the propriety of class certification for any purpose should the Court not approve the Settlement Agreement. In connection with the proposed certification of the Plaintiff Class, the Parties

shall cooperate and present to the Court for its consideration competent evidence, as may be requested by the Court, under the applicable due process requirements and standards for class certification.

## SETTLEMENT APPROVAL PROCEDURE

27.    This Settlement Agreement will become final and effective upon the Effective Date.

28.    Execution of this Settlement Agreement by the Parties and their respective counsel of record.

29.    Entry of an Order by the Court (a) granting preliminary approval of the Settlement Agreement, including conditional certification of the Plaintiff Class for settlement purposes only (the Parties' proposed Order is attached hereto as **Exhibit A**), (b) approving the proposed Class Notice (the Parties' proposed form is attached hereto as **Exhibit B**), and (c) scheduling a hearing date for final approval of the Settlement Agreement.

30.    Filing by Class Counsel, at least five (5) calendar days prior to the final approval hearing, the Settlement Administrator's verification, in writing, that the Class Notice to the Plaintiff Class has been disseminated in accordance with the Court's preliminary approval Order.

31.    Entry of an Order by the Court granting final approval of the Settlement Agreement.

## SETTLEMENT PAYMENT AND CALCULATION OF CLAIMS

32.    In consideration of the mutual covenants and promises set forth herein, the Parties agree, subject to the Court's approval, as follows:

33.    Settlement Amount: Defendant agrees to pay only One-Million, Three-Hundred Thousand Dollars ($1,300,000) and no more as monetary consideration for this Settlement Agreement. This amount includes: (i) all payments made to Settlement Class Members; (ii) enhancement awards (i.e., service payments) to the Class Representatives (of up to $4,500 for Plaintiff Flores and $1,500 for Plaintiff Ferraris); (iii) $5,000 for the release of any PAGA claims that could be and/or were asserted; (iv) Settlement Administrator Expenses; (v) Class Counsel's approved attorneys' fees (of no more than $325,000); (vi) Class Counsel's approved litigation costs (of no more than $20,000; and (vii) all payroll taxes other than Defendant's portion of payroll taxes. Defendant shall fully fund the Gross Settlement Fund to the Settlement Administrator within twenty (20) days of the Effective Date.

a.     <u>Attorney's Fees and Costs</u>: In conjunction with final approval of this Settlement Agreement, Class Counsel will apply to the Court for an award of attorneys' fees in an amount totaling no more than 25% of the Gross Settlement Fund (i.e., $325,000), plus actual costs totaling no more than $20,000. Defendant will not oppose such application. If the Court does not approve an award of 25% of the Gross Settlement Fund, the difference between this amount and the actual amount approved shall be distributed to the Settlement Class Members pursuant to the ratio that is their respective Individual Settlement Share. These fees and costs are included in, and come from, the Gross Settlement Fund and will be paid directly to Class Counsel by the Settlement Administrator within ten (10) days after Defendant funds the Gross Settlement Fund. Class Counsel will be issued an IRS Form 1099 for their award of attorneys' fees and costs. Class Counsel will file their motion for attorneys' fees at least fourteen days before the deadline for Settlement Class Members to submit Objections to the Settlement.

b.     <u>Enhancement Awards</u>: Subject to Court approval, in addition to any payment each of the Representative Plaintiffs receive in their capacity as Class Members, Plaintiff Flores will individually receive an enhancement award from the Gross Settlement Fund for his services as a Class Representative in an amount of no more than $4,500 and Plaintiff Ferraris will individually receive an enhancement award from the Gross Settlement Fund for her services as a Class Representative in an amount of no more than $1,500. If the Court does not approve these awards, the difference between these amounts and the actual amounts approved shall be returned to the Net Settlement Fund to be distributed to Settlement Class Members, according to the formula set forth below. The Class Representatives' enhancement awards will be distributed by the Settlement Administrator within ten (10) business days after Defendant funds the Gross Settlement Fund noted herein. The Class Representatives will be issued an IRS Form 1099 for this income.

c.     <u>Settlement Awards to California Class Members</u>: Each member of the California Class shall be entitled to receive a pro rata portion of ninety-five percent (95%) of the Net Settlement Fund (his/her "Individual Settlement Share"), calculated based upon the

number of pay periods in which the member worked during the California Settlement Period, divided by the total number of pay periods worked by all Plaintiff Class Members during said period. The Settlement Administrator will calculate the number of pay periods worked by Settlement Class Members, the amount to be paid per pay period, and the Individual Settlement Share that each Settlement Class Member is eligible to receive. Settlement Class Member's checks shall be distributed by the Settlement Administrator within ten (10) calendar days after the Defendant funds the Gross Settlement Fund.

d.    Settlement Awards to FLSA Class Members: Each member of the FLSA Class shall be entitled to receive a pro rata portion of five percent (5%) of the Net Settlement Fund (his/her "Individual Settlement Share"), calculated based upon the number of pay periods in which the member worked during the FLSA Settlement Period, divided by the total number of pay periods worked by all Plaintiff Class Members during said period. The Settlement Administrator will calculate the number of pay periods worked by Settlement Class Members, the amount to be paid per pay period, and the Individual Settlement Share that each Settlement Class Member is eligible to receive. Settlement Class Members' settlement checks shall be distributed by the Settlement Administrator within ten (10) calendar days after the Defendant funds the Gross Settlement Fund.

e.    Payments to the California Labor & Workforce Development Agency: The Parties shall apply to the Court for approval of a payment under the PAGA, Labor Code §§ 2699, *et seq*. The Parties have agreed to allocate Five Thousand dollars ($5,000) (the "PAGA Payment") from the Gross Settlement Fund towards a release of the PAGA claims, as described more fully herein. The Parties agree that this amount is reasonable in light of the facts and circumstances presented in the Action. If approved, the California Labor & Workforce Development Agency ("LWDA") shall be paid seventy-five percent (75%) of the total amount allocated towards PAGA claims from the Gross Settlement Fund within ten (10) business days after Defendant funds the Gross Settlement Fund noted herein. If approved, twenty-five percent (25%) of the total amount allocated towards PAGA claims shall be included in the calculation of the Net Settlement Fund and thereafter be

distributed to the Settlement Class in accordance with the terms of this agreement. In the event the Court rejects this allocation, the parties will meet and confer with the Court to reach a penalty allocation that is acceptable to all parties and that does not materially alter the terms of the Settlement Agreement. Notably, the LWDA has been notified of the pendency of this action, and has elected not to pursue penalties or any other remedy for the alleged violations described in the Complaint.

f.   Cost of Settlement Administration: The Settlement Administrator Expenses shall be paid from the Gross Settlement Fund within ten (10) business days after Defendant funds the Gross Settlement Fund. If Defendant opts to terminate the Settlement Agreement pursuant to the terms of this agreement, the Parties shall bear equally the cost of such fees and expenses. If the Settlement Agreement is not given final approval by the Court for any other reason, the Parties shall bear the cost of such fees and expenses equally.

34.   Upon completion of its calculation of payments, the Settlement Administrator will provide Class Counsel and Defendant's Counsel with a report listing the amount of all payments to be made to each Settlement Class Member. The Settlement Administrator's report to Class Counsel shall not include Settlement Class Members' "Personal Identifying Information" which includes any Settlement Class Member's name, address, telephone number, or Social Security number, but shall instead identify each Settlement Class Member by the last four digits of his/her Social Security number only. After receiving the Settlement Administrator's report, Class Counsel and Defendant's Counsel shall review the Settlement Administrator's report to determine if the calculation of payments to Settlement Class members is consistent with this Settlement.

## ALLOCATION AND TAX TREATMENT

35.   The Parties agree that thirty-three percent (33%) of the Individual Settlement Share that is distributed to each Settlement Class Member will be considered wages, thirty-three percent (33%) will be considered interest, and thirty-four percent (34%) percent will be considered penalties. The wages portion will be reported as such to each Settlement Class Member on a Form W-2. The penalties and interest portions will be reported as such to each Settlement Class Member via an IRS Form 1099.

36.    Any tax obligation arising from the Settlement Payments and/or Class Counsels' fees and costs made under the terms of this Agreement will be the sole responsibility of each person receiving such payment(s). Each Settlement Class Member is responsible to pay his or her portion of the taxes due on any payment he or she receives under this Settlement Agreement. Defendant is not giving any tax advice in connection with the Settlement Agreement or any payments to be made pursuant to this Settlement Agreement. Each Settlement Class Member agrees to indemnify and hold harmless Defendant from any liability for taxes, fees, costs, or assessments resulting from his or her failure to timely pay taxes, interest, fees, or penalties owed.

37.    The employer's share of taxes, including statutory FICA, FUTA and California payroll withholding taxes arising from any payments to Settlement Class Members, shall be paid by MediFit separately. Payroll taxes, other than the employer's share, will be computed by the Settlement Administrator based on the amounts paid to the Settlement Class Members. The Settlement Administrator shall be responsible for making all necessary payments and filings in connection with such payments.

## APPOINTMENT OF SETTLEMENT ADMINISTRATOR

38.    The Settlement Administrator will perform the duties of distributing notice, independently reviewing requests for exclusion and objections, and verifying and distributing any amounts due to Settlement Class Members as described in this Settlement Agreement. The Settlement Administrator will report, in summary or narrative form, the substance of its findings. All disputes relating to the Settlement Administrator's ability and need to perform its duties shall be referred to the Court, if necessary, which will have continuing jurisdiction over the terms and conditions of this Settlement Agreement, until all payments and obligations contemplated by the Settlement Agreement have been fully carried out.  The Settlement Administrator shall not disclose personal Identifying Information to Class Counsel.

## NOTICE TO THE PLAINTIFF CLASS

39.    Subject to Court approval of content, the Class Notice shall be sent to the Plaintiff Class, by first class mail, within fourteen (14) calendar days of the entry of an Order granting preliminary approval of this Settlement Agreement. The Class Notice will, subject to Court approval, advise all

Class Members of the nature of the case, the terms of the Settlement, the binding nature of the release, the final approval hearing date, and Class Members' right to accept their share of the Net Settlement Fund, opt-out, or to object. The Class Notice shall include the following information: (1) contact information for class counsel to answer questions; (2) the address for a website, maintained by the claims administrator, with links to the notice, motions for approval and for attorneys' fees and any other important documents in the case; and (3) instructions on how to access the case docket via PACER or in person at the court's location. The Class Notice will advise Class Members that the hearing date for final approval may change without further notice to the class, and that Class Members are advised to check the settlement website or the Court's PACER site to confirm that the date has not changed. The Class Notice shall also contain the estimated amounts of payments from Defendant to each Class Member.

40.      Within ten (10) calendar days of the entry of an Order granting preliminary approval of the Settlement and Class Notice, Defendant will provide the Settlement Administrator the best information in its possession, custody, or control with respect to the names, last known address(es), and home telephone number(s) for each member of the Plaintiff Class, and the dates of service and number of pay periods that each member of the Plaintiff Class worked for Defendant during the California and FLSA Settlement Periods. In addition thereto, Defendant will provide the Settlement Administrator the Social Security Numbers for each member of the Plaintiff Class. Defendant agrees to provide this information on an Excel spreadsheet. The Settlement Administrator shall keep and maintain the information as confidential and shall only use the Social Security information for purposes of this Settlement and to locate members of the Plaintiff Class.

41.      The Settlement Administrator will use the United States Postal Service National Change of Address ("NCOA") List to verify the accuracy of all addresses before the initial mailing date to ensure that the Class Notice is sent to all Plaintiff Class Members at the addresses most likely to result in immediate receipt of the documents. It will be conclusively presumed that if an envelope so mailed has not been returned within fifteen (15) calendar days of the mailing that the Class Member received the Class Notice. With respect to any returned envelopes, the Settlement Administrator will perform a routine skip trace procedure to obtain a current address and, if an updated address is located, then re-

mail the envelope to such address within five (5) calendar days of the receipt of the returned envelope. Plaintiff Class Members to whom Class Notices were re-sent after having been returned undeliverable to the Settlement Administrator shall have twenty (20) calendar days thereafter to object or opt-out of the Settlement. Class Notices that are re-mailed shall be accompanied by a short cover letter from the Settlement Administrator informing the recipient of this adjusted deadline. No third mailing shall occur without good cause, as determined by the Settlement Administrator. For purposes of effecting a complete settlement of all claims as the Parties envision, the Settlement Administrator's efforts at determining the accuracy of addresses shall be deemed by the Court to have given actual notice to the entire Plaintiff Class even in the event that any particular Plaintiff Class Member maintains that he/she did not get actual notice.

42.     Class Counsel shall provide the Court, at least five (5) calendar days prior to the final approval hearing, a declaration by the Settlement Administrator of due diligence and proof of mailing with regard to the mailing of the Class Notice.

## RESPONDING TO THE CLASS NOTICE

43.     Unless a member of the Plaintiff Class opts-out of the Settlement, he or she shall be a Settlement Class Member and shall be bound by the terms and conditions of this Settlement Agreement, including the release of claims. As described in the Class Notice, in order to opt-out, a member of the Plaintiff Class must submit to the Claims Administrator, by First Class Mail, a written, signed and dated request to the Settlement Administrator postmarked no later than forty-five (45) days after the Class Notice is mailed (or not more than twenty (20) calendar days after the date the Class Notice is re-mailed, in the circumstance described above). The request to opt-out must state in substance:

> "I have read the Class Notice and I wish to opt-out of the class action and settlement of
> the case *Flores, et al. v. MediFit Corporate Services, Inc.*"

The request to opt-out must contain the name and last four digits of the Plaintiff Class member's Social Security Number. The request to opt-out must be completed by the Plaintiff Class member seeking exclusion from the Settlement. No other person may opt-out for a member of the Plaintiff Class.

44.     By signing this Settlement Agreement, the Class Representatives waive their right to opt-out from the Settlement Class and any such request for an exclusion will be void and of no force and effect.

45.    Settlement Class Members who opt-out may object to the settlement.  Settlement Class Members who do not opt-out may not object to the settlement.  If an opt-out Settlement Class Member wishes to object, he/she must do so within forty-five (45) calendar days after the Class Notice is sent (or not more than twenty (20) calendar days after the date the Class Notice is re-mailed, in the circumstance described above). Objections to the Settlement must be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, Philip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, or by filing them in person at any location of the United States District Court for the Northern District of California.

46.    Objections must describe why the objector believes the Settlement is unfair and whether the objector intends to appear at the final approval hearing. Deficient or untimely objections shall not be considered. Class Members who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement, unless otherwise ordered by the Court. Class Counsel and Defendant's Counsel may, at least ten (10) calendar days (or some other number of days as the Court shall specify) before the Final Approval Hearing, file responses to any written objections.

47.    The Class Notice will apprise each member of the Plaintiff Class of the approximate dates he or she held an eligible position during the California and/or FLSA Settlement Periods as well as his or her total number of pay periods. These calculations shall be based on Defendant's records. Defendant's records are presumed to be accurate.

48.    If a member of the Plaintiff Class does not wish to challenge the information set forth in the Class Notice, then the member need do nothing, and payment will be made based on the Settlement Administrator's records.

49.    If a member of the Plaintiff Class wishes to challenge the information set forth in the Class Notice, then the member must mail, via First Class Mail, a written, signed challenge along with supporting documents, if any exist, to the Settlement Administrator at the address provided on the Class Notice within twenty-one (21) calendar days of the date the Class Notice was mailed to the member of

the Plaintiff Class (or within ten (10) calendar days of the date the Class Notice was re-mailed, in the circumstance described above).  Challenges shall not be considered Objections.

50.    No challenge will be considered timely if it is postmarked more than the number of days set forth in the preceding paragraph of this Settlement Agreement. Absent an agreement between Class Counsel and Defendant's Counsel regarding how to address the dispute, the Settlement Administrator shall have authority to resolve the challenge and make a final and binding determination without hearing or right of appeal. Defendant agrees to provide the Settlement Administrator with additional documents or other information associated with the challenge, if such exists. All disputes shall be resolved, either by agreement of Class Counsel and Defendant's Counsel, or by decision of the Settlement Administrator as provided herein, prior to submitting the Settlement Administrator's declaration to the Court for final approval.

51.    Settlement checks issued to the Class Representatives and Settlement Class Members shall remain valid for one-hundred and eighty (180) calendar days from the date of issuance. This expiration or cancellation date shall be clearly printed on the front of the check ("Void Date"). If the Class Representatives or any Settlement Class Members do not cash their settlement payment check(s) before the Void Date, the funds represented thereby will be tendered to the *cy pres* beneficiaries, to be selected by the parties, within five (5) days of the close of the 180 day period. The Settlement Administrator will perform one skip trace on any undeliverable settlement check. Settlement checks can be reissued to Settlement Class Members upon request within this 180 day period but any reissued checks shall have the same Void Date as the original settlement check. Those Settlement Class Members who fail to cash their settlement checks will be deemed to have waived irrevocably any right in or claim to a settlement payment, but the Settlement Agreement and its waivers and releases shall remain binding upon them.

## RELEASES

52.    Upon the final approval by the Court of this Settlement Agreement, and except as to such rights or claims as may be created by this Settlement Agreement, the Settlement Class Members release Defendant, its current or former subsidiaries, affiliates, owners, parents, predecessors, insurers, agents, employees,   successors,   assigns,   officers,   officials,   directors,   employers,   attorneys,   personal

representatives, executors, and shareholders, including their respective pension, profit sharing, savings, health, and other employee benefit plans of any nature, the successors of such plans, and those plans' respective current or former trustees and administrators, agents, employees, and fiduciaries ("Releasees"), of and from any and all claims, rights, demands, charges, complaint, causes of action, obligations or liability of any and every kind that were, or could have been, asserted in any version of any complaint filed in the Action, or are based on or arise out of the facts or law alleged in any version of any complaint filed in the Action, including those under any state and federal law for minimum wage and overtime, failure to provide meal breaks, failure to authorize and permit rest breaks, failure to timely pay wages at termination, failure to pay a proper piece rate, failure to pay wages due, failure to reimburse necessary business expenses, failure to provide accurate and itemized wage statements, unfair business practices, and violations of the Labor Code Private Attorneys General Act of 2004.

53.     The release shall be effective for the period of time from June 16, 2011 through the date of final approval of the Settlement by the Court, provided that approval is given on or before December 31, 2016.  If final approval is not given by December 31, 2016, then the release will run through December 31, 2016.

54.     In addition, the FLSA Class Members' release will include a release of any and all claims for unpaid piece rate, minimum wage, and overtime claims under the Fair Labor Standards Act. None of the payments made pursuant to this Settlement Agreement will be considered for purposes of determining eligibility for, vesting, or participation in, or contributions to any welfare or benefit plans, including, without limitation, all plans, subject to the ERISA.

55.     Upon final approval by the Court of this Settlement Agreement, and for and in consideration of the payment of the Class Representatives' enhancement awards for services performed on behalf of the Class, the Class Representatives fully release and discharge Releasees from any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees and costs, damages, penalties, prejudgment interest, actions or causes of action of whatever kind or nature, whether known or unknown, which the Class Representatives have ever had, or hereafter may claim to have, arising on or before the date that they sign this Settlement Agreement, including without limitation, any claims for unpaid compensation, wages, missed meal breaks, missed rest breaks, time-shaving, business

expenses, inaccurate wage statements, penalties, or waiting time penalties under the California Labor Code, the California Business and Professions Code, the federal Fair Labor Standards Act, 29 U.S.C. section 2012, *et seq.*, Labor Code Private Attorneys General Act or any state, county or city law or ordinance regarding wages or compensation; any claims for employee benefits, including without limitation, any claims for under the Employee Retirement Income Security Act of 1974; any claims of unemployment discrimination on any basis, including without limitation, any claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, 42 U.S.C. section 1981, the Civil Rights Act of 1991, the Americans with Disabilities Act of 1991, the Family and Medical Leave Act of 1993, the California Government Code, or any other state, county or city law or ordinance regarding employment discrimination or retaliation. The Class Representatives acknowledge and agree that the foregoing general release is given in exchange for the consideration provided to them under this Settlement Agreement by Defendant.

56.     The Class Representatives expressly waive any rights or benefits afforded by Section 1542 of the Civil Code of the State of California, and do so understanding the significance of that waiver. Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

### DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

57.     The Parties shall promptly submit this Settlement Agreement to the Court in support of Plaintiffs' Motion for Preliminary Approval for determination by the Court as to its fairness, adequacy, and reasonableness and apply for the entry of a preliminary Order substantially in the following form:

a.     Scheduling a fairness hearing on the question of whether the proposed Settlement should be finally approved as fair, reasonable, and adequate as to the Plaintiff Class;

b.     Approving the proposed Class Notice;

c.     Preliminarily approving the Settlement; and

d.     Preliminarily certifying the Plaintiff Class for purposes of settlement only.

### DUTIES OF THE PARTIES FOLLOWING FINAL COURT APPROVAL

58.    Following final approval by the Court of this Settlement Agreement, Class Counsel will submit a proposed final Order and judgment (the Parties' proposed form is annexed hereto as **Exhibit D**):

a.    Approving the Settlement Agreement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions as if they were an Order of the Court;

b.    Approving and awarding Class Counsel's fees and costs, the Settlement Administration Expenses, and the enhancement awards as set forth in the Settlement Agreement;

c.    Dismissing the claims released herein from the operative Complaint with prejudice as to the Representative Plaintiffs and Settlement Class Members (limited as to related claims).

## VOIDING THE SETTLEMENT AGREEMENT

59.    Defendant has the right to rescind the Settlement Agreement as a result of an opt-out percentage that equals or exceeds 10% of all Settlement Class Members ("Excessive Opt-Out Percentage"). The Settlement Administrator shall inform the Parties if the Excessive Opt-Out Percentage is ever met or exceeded. The Parties agree that, if the number of individuals opting out of the Settlement equals or exceeds the Excessive Opt-Out Percentage, Defendant may elect to terminate the Settlement Agreement by providing written notice to Class Counsel of same within ten (10) days after the Settlement Administrator informs Defendant that the Excessive Opt-Out Percentage has been met or exceeded. If this term is not approved by the Court, Defendant has the right, at its sole discretion, to withdraw from the Settlement and cancel this Settlement Agreement.

60.    If the Court awards a lower amount of attorneys' fees or costs requested by Plaintiffs' counsel, then the other terms of the Settlement Agreement shall apply. The award of attorneys' fees and costs is not a material term of the Settlement Agreement and the award of fees or costs less than requested by Plaintiffs' counsel does not give rise to a basis to abrogate the Settlement Agreement. Any unapproved amount of attorneys' fees, costs and/or administrative costs shall be redistributed to Settlement Class Members.

## PARTIES' AUTHORITY

61.     The signatories represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties to its terms and conditions.

## MUTUAL FULL COOPERATION

62.     The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement Agreement, including but not limited to, execution of such documents as may reasonably be necessary to implement the terms of this Settlement Agreement. The Parties to this Settlement Agreement shall use their best efforts, including all efforts contemplated by this Settlement Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Settlement Agreement. As soon as practicable after execution of this Settlement Agreement, Class Counsel shall, with the assistance and cooperation of Defendant's Counsel, take all necessary steps to secure the Court's final approval of this Settlement Agreement.

63.     Defendant understands that in the course of applying for settlement approval, Plaintiffs will be required to submit sufficient evidence to support the fairness of the proposed settlement terms. Defendant affirmatively agrees to assist and support Plaintiffs in providing such evidence and, if requested by Plaintiffs, will provide declaration(s) or other admissible evidence reflecting class size, compensation information, and pay periods worked during the California and FLSA Settlement Periods.

64.     The Parties agree that neither they nor their counsel will solicit or otherwise encourage, directly or indirectly, Plaintiff Class members to request exclusion from the Settlement Class, object to the Settlement, or appeal the final judgment.

## NO ADMISSION OF LIABILITY

65.     Each of the Parties has entered into this Settlement Agreement with the intention to avoid further disputes and litigation with the attendant risk, inconvenience, and expense. Nothing contained herein, nor the consummation of this Settlement Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant. This Settlement Agreement is a settlement document and shall, pursuant to California Evidence Code section 1152 and Federal Rule of Evidence 408, be inadmissible as evidence in any proceeding. The preceding sentence shall not apply to an action or proceeding to approve, interpret, or enforce this Settlement Agreement.

66.    The Parties further agree that any action Defendant takes pursuant to California Labor Code section 226.2(b) shall not be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of the Defendant. The Parties agree to toll the time periods set forth in section 226.2(b) for six months as follows:  Should Defendant choose to take any action pursuant to section 226.2(b), the Parties agree that Defendant shall have until January 1, 2017, to provide notice of the Defendant's election to make payments to its current and former employees under section 226.2(b)(3). The Parties further agree that Defendant shall have until June 15, 2017, to make payments to its employees pursuant to section 226.2(b).

## NO PUBLICITY

67.    Neither named Plaintiff Francisco Flores, named Plaintiff Giulia Ferraris, Defendant, nor their counsel shall make any public statements, to the media or otherwise, concerning the Settlement Agreement or the Settlement embodied herein, and they shall decline to respond to media inquiries concerning the Settlement. Nothing in this provision shall prevent Plaintiffs' counsel from communicating directly with members of the Plaintiff Class regarding the Settlement, provided that such communication is limited to members of the Plaintiff Class. Nothing shall preclude Plaintiffs' counsel from discussing this lawsuit or Settlement in any motion for settlement approval, fee application, or other document filed with any court in any subsequent litigation. Additionally, the Parties agree that Plaintiffs' counsel may post the following agreed-upon language on their website: "Scott Cole & Associates, APC, filed an action against MediFit Corporate Services, Inc., alleging certain wage and hour claims. This claim has resolved"

## NOTICES

68.    Unless otherwise specifically provided, all notices, demands or other communications in connection with this Settlement Agreement shall be: (1) in writing; (2) deemed given on the third business day after mailing; and (3) sent via United States registered or certified mail, return receipt requested, addressed as follows:

To Plaintiffs:

    Matthew R. Bainer, Esq.
    SCOTT COLE & ASSOCIATES, APC
    1970 Broadway, Ninth Floor
    Oakland, California 94612

To Defendant:

    Brian T. Ashe
    Michael Wahlander
    Elizabeth MacGregor
    SEYFARTH SHAW LLP
    560 Mission Street, 31st Floor
    San Francisco, CA 94105

## CONSTRUCTION AND INTERPRETATION

69.    The Parties agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arm's-length negotiations between the Parties and that this Settlement Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Settlement Agreement.

70.    Paragraph titles are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any of its provisions. Each term of this Settlement Agreement is contractual and not merely a recital.

71.    This Agreement shall be subject to and governed by the laws of the State of California. The parties acknowledge that they are subject to the continuing jurisdiction of the Court to enforce the terms of the Settlement contained herein.

## MODIFICATION

72.    This Settlement Agreement may not be changed, altered, or modified, except in writing and signed by counsel for the Parties, and approved by the Court. This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by counsel for the Parties.

## INTEGRATION CLAUSE

73.    This Settlement Agreement contains the entire agreement between the Parties relating to any and all matters addressed in the Settlement Agreement, and all prior or contemporaneous

agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, with respect to such matters are extinguished. No rights hereunder may be waived or modified except in a writing signed by all Parties.

## BINDING ON ASSIGNS

74.     This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

## PLAINTIFF CLASS SIGNATORIES

75.     It is agreed that it is impossible or impractical to have each member of the Plaintiff Class execute this Settlement Agreement. The Notice will advise all Class Members of the binding nature of the release and such shall have the same force and effect as if each member of the Plaintiff Class executed this Settlement Agreement.

## COUNTERPARTS

76.     This Settlement Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties. Copies of the executed agreement shall be effective for all purposes as though the signatures contained therein were original signatures.

//
//
//
//
//
//
//
//
//
//
//

**IT IS SO AGREED,**

**CLASS REPRESENTATIVES:**

DATED: _____, 2016    By: _____
                                    *Francisco Flores*
                                    E41A05334D384CD...
                                    FRANCISCO FLORES
                                    Class Representative

DATED: _____, 2016    By: _____
                                    GIULIA FERRARIS
                                    Class Representative

**DEFENDANT:**

DATED: _____, 2016    MEDIFIT CORPORATE SERVICES, INC.

                                By: _____

                                Title: _____

**IT IS SO AGREED,**

**CLASS REPRESENTATIVES:**

DATED: _____, 2016    By: _____

                                           FRANCISCO FLORES
                                           Class Representative

DATED: _____, 2016    By: _____

                                           GIULIA FERRARIS
                                           Class Representative

**DEFENDANT:**

DATED: _____, 2016    MEDIFIT CORPORATE SERVICES, INC.

                                           By: _____

                                           Title: _____

**IT IS SO AGREED,**

**CLASS REPRESENTATIVES:**

DATED: _____, 2016        By: _____

                                         FRANCISCO FLORES
                                         Class Representative


DATED: _____, 2016        By: _____

                                         GIULIA FERRARIS
                                         Class Representative


**DEFENDANT:**

DATED: ___July 6_____, 2016       MEDIFIT CORPORATE SERVICES, INC.

                                         DocuSigned by:

                                    By: _____
                                         Dan Burns
                                         42E2FDC937F442D

                                    Title: Chief Executive Officer
                                         _____

# EXHIBIT B

Scott Edward Cole, Esq. (S.B. #160744)
Jeremy A. Graham, Esq. (S.B. 234166)
**SCOTT COLE & ASSOCIATES, APC**
1970 Broadway, Ninth Floor
Oakland, CA 94612
Telephone: (510) 891-9800

Attorneys for Representative Plaintiffs and the Plaintiff Class

Brian T. Ashe (SBN 139999)
Michael A.Wahlander (SBN 260781)
Elizabeth J. MacGregor (SBN 267326)
**SEYFARTH SHAW, LLP**
560 Mission Street, Suite 3100
San Francisco, CA 94105
Telephone:  (415) 397-2823

Attorneys for Defendant MEDIFIT CORPORATE SERVICES, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANCISCO FLORES and GIULIA FERRARIS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MEDIFIT CORPORATE SERVICES, INC., and DOES 1 thru 100, inclusive,<br><br>Defendants. | Case No. 3:15-cv-03423-WHO<br><br>**DECLARATION OF CHRIS PIKUS FOR RUST CONSULTING, INC.** |

- 1 -
**DECLARATION OF CHRIS PIKUS FOR RUST CONSULTING, INC.**

I, Chris Pikus, declare as follows:

1.      I am a Senior Project Manager for Rust Consulting, Inc. ("Rust").  My business address is 625 Marquette Avenue, Suite 900, Minneapolis, Minnesota 55402-2469.  My telephone number is (612) 359-2815.  I am over twenty-one years of age and am authorized to make this declaration on behalf of Rust and myself.

2.      Rust has extensive experience in class action matters, having provided services in class action settlements involving antitrust, securities fraud, property damage, employment discrimination, employment wage and hour, product liability, insurance and consumer issues.  We have provided notification and/or claims administration services in more than 4,500 cases.  Of these, more than 1,700 were Labor & Employment cases.

3.      Rust was engaged by Counsel for the Plaintiff and Counsel for the Defendant (collectively the "Parties") to provide notification services in the *Francisco Flores, et. al. v. MediFit Corporate Services* Settlement ("Settlement").  Duties included: a) preparing, printing and mailing of the Notice to Class of Proposed Settlement ("Class Notice"), b) receiving and reviewing requests for Exclusion and objections; c) printing and mailing Individual Settlement Award checks to Class Members; and d) for such other tasks as the Parties mutually agree or the Court orders Rust to perform.

4.      Rust obtained a mailing address of Flores v MediFit Settlement Administrator, c/o Rust Consulting, Inc. - 5190, P.O. Box 2396, Faribault, Minnesota, 55021-9096 to receive Requests for Exclusion, objections, undeliverable Class Notices and other communications regarding the Settlement.

5.      Rust obtained a toll-free telephone number of 1-866-801-0475 for Class Members to call with questions regarding the Settlement.

6.      On or about July 26, 2016 Rust received text for the Notice from Counsel.  A draft of the formatted Class Notice was prepared by Rust, in English, and approved by the Parties prior to the Class Notice mailing.

- 2 -
**DECLARATION OF CHRIS PIKUS FOR RUST CONSULTING, INC.**

7. On or about July 29, 2016, Counsel for the Defendant provided Rust with a mailing list containing the Class Member's names, last known addresses, Social Security Numbers, last known phone numbers and number of pay periods worked during the Class Period ("Class List"). The Class List contained data for 1,152 Class Members.

8. The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. The NCOA contains requested changes of address filed with the U.S. Postal Service. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA would be utilized in connection with the mailing of the Class Notice.

9. On August 5, 2016, Rust mailed Class Notice to 1,152 Class Members contained in the Class List via First Class mail. The Class Notice advised Class Members that they could submit a Request for Exclusion or Objection by September 19, 2016.

10. A website was created and a web address was included in the Class Notice for viewing Settlement documents and obtaining information about the proposed Settlement. The website address included in the Notice was www.floresvmedifitsettlement.com. The website went live on August 5, 2016.

11. As of this date, 34 Class Notices have been returned as undeliverable. Of the 34 Class Notices returned as undeliverable, Rust performed 28 address traces on Class Notices returned as undeliverable for the first time. The address trace utilizes the Class Member's name, previous address and Social Security Number for locating a current address. Of the 28 traces performed, 12 more current addresses was obtained and a Class Notice was promptly re-mailed to the Class Member via First Class mail. Of the 28 traces performed, Rust did not obtain updated addresses for 16 undeliverable Class Notice. Of the 12 re-mailed to a traced address, one (1) was returned a second time. As of this date, 23 Class Notices remains undeliverable.

12. As of this date, Rust received zero (0) Requests for Exclusion. Of the zero (0) Requests for Exclusions submitted, zero (0) were submitted with a deficiency and sent a cure letter.

**DECLARATION OF CHRIS PIKUS FOR RUST CONSULTING, INC.**

13.      As of this date, Rust received one (1) challenge from a Class Member to the accuracy of the information provided in the Class Notice.  The Challenge was reviewed by the parties and the parties agreed to accept the Challenge and increase the number of pay periods for the individual.  Rust mailed a letter to the Class Member informing them of this decision.

14.      As of this date, Rust received zero (0) objection.

15.      The total cost for the administration of this Settlement, including fees incurred and future costs for completion of the administration is estimated to be $20,500.

I declare under penalty of perjury under the laws of the State of California and the United States that the above is true and correct to the best of my knowledge and that this Declaration was executed this 5th day of October 2016, at Minneapolis, MN.

CHRIS PIKUS

- 4 -

**DECLARATION OF CHRIS PIKUS FOR RUST CONSULTING, INC.**

# EXHIBIT C

# Scott Cole & Associates, APC
Class Action Attorneys

## Firm Resume & Overview

**Introduction**:

Scott Cole & Associates, APC ("SCA") represents individuals in employment and consumer class action litigation. Founded in 1992, SCA has been devoted primarily to such matters, having litigated hundreds of cases against businesses of all types and in nearly every industry imaginable. The members of SCA have extensive experience prosecuting class/complex actions, both in a sole counsel capacity and in leadership positions, oftentimes among many firms, in California and nation-wide litigation, have published articles dealing with various substantive issues as well as class action litigation/procedure, speak regularly at public events, and have served as consulting experts in class action litigation. For well over two decades, the firm has recovered hundreds of millions of dollars for hundreds of thousands of workers and consumers, been involved in record-setting resolutions and helped achieve the correction of numerous unlawful employment and consumer fraud practices.

**Attorney Backgrounds, Education and Professional Affiliations:**

In addition to its staff of paralegal and other legal support personnel, the firm's practice is lead by the following attorneys.

Scott Edward Cole, Esq.
Born December 28, 1965 in San Pablo, California. San Francisco State University, B.A., Speech Communications (Individual Major in Rhetoric), 1989, Minor Study in Business Administration, 1989; University of San Francisco School of Law, J.D., 1992; President, University of San Francisco Labor & Employment Law Society; Admitted, California State Bar, December 1992; Member, California State Bar Labor and Employment Law Section, 1993-present; Admitted, United States District Court (Northern District), 1992; Admitted, United States Court of Appeals (9th Circuit), 1993; Admitted, United States District Court (Eastern District), 1995; Admitted, United States District Court (Central District), 2005; Admitted, United States District Court (Southern District), 2005; National Association of Securities Dealers (Registered Representative [Series 7], 1987-1989); Member/Referral Attorney, Animal Legal Defense Fund (1998-2000); Member, Board of Directors, American Synergy Center (2001); Member, Association of Trial Lawyers of America (2005-present); Member, California Employment Lawyers Association (2005-present); Member, American Bar Association (2007-present); Member, Alameda County Bar Association (2008-present); Vice Chair (2009 & 2010), Alameda County Bar Association's Labor & Employment Law Section Executive Committee; Member, National Employment Lawyers Association (2009-present); U.S. Delegate to the InterAmerican Meeting of Labor and Trade Union Lawyers, Havana, Cuba, March 2012.

<u>Jeremy A. Graham, Esq.</u>
Born April 2, 1967 in New York, New York. University of California at Berkeley, B.A.,
Philosophy, 1989 (completed graduate seminars in Comparative Literature with Prof. Avital
Ronell 1989-1990); University of California, Hastings College of the Law, J.D., 2004 (Top 10 in
graduating class); Hastings Law Journal; Order of the Coif. Extern for Justice Mark Simmons,
California Court of Appeal, First District, Division Five, 2004; Admitted, California State Bar,
2004; Admitted, United States District Court (Northern District), 2006; Admitted, United States
District Court (Eastern District), 2008; Admitted, United States District Court (Central District),
2016; Pro Bono work: Legal Aid Society-Employment Law Center, 2012; Legal Services for
Children, 2015-2016. Mr. Graham serves as Associate Attorney.

(*Interim Counsel Not Listed*)


## <u>SCA Scholarly Publications (*Partial List Only*):</u>

Scott Edward Cole & Matthew Roland Bainer, *The Quest for Class Certification*, Employment
Law Strategist (Sept. & Oct. 2003).

Scott Edward Cole & Matthew Roland Bainer, *To Be or Not to Be a Penalty: Defining the
Recovery Under California's Meal and Rest Period Provisions*, Golden Gate U. L. Rev. (Spring
2005).

Scott Edward Cole & Matthew Roland Bainer, *To Certify or Not to Certify: A Circuit-By-Circuit
Primer of the Varying Standards for Class Certification in Actions under the Federal Labors
Standards Act*, B.U. Pub. Int. L.J. (Spring 2004).

Scott Edward Cole, *Kullar v. Footlocker Retail, Inc.: A New Standard for Class Action
Settlement Approval*, CELA Bulletin (April 2009).

Matthew Roland Bainer, *Ninth Circuit Provides Much Needed Guidance on Evidentiary Burdens
in Overtime Misclassification Litigation,* CELA Bulletin (May 2009).

Kevin Robert Allen, *Putting the "Rest" Back in Rest Break,* Alameda County Bar Association -
Labor & Employment Section News (Autumn 2009).

Michael Scott Lubofsky, *Barristers to Blogs: Softening Ethical Restrictions in the Digital Age,*
Los Angeles Daily Journal (June 14, 2010).


## <u>Representative Class Action/Complex Litigation Matters:</u>

Scott Cole & Associates, APC has represented hundreds of thousands of individuals in hundreds
of legal matters, including well over 200 class actions and/or complex litigation cases. The firm
has experience in environmental, commercial and personal injury matters but, for nearly 20 years,
has been almost entirely devoted to the prosecution of class action wage and hour matters, only a
sampling of which are listed below. We are currently investigating wage and hour violations by

numerous companies and are prepared to prosecute these as California and/or nationwide cases. Far from being a comprehensive list of our class action experience, examples of the types of cases we litigate include:

## Employment Class Action Litigation Experience [*Partial List Only*]:

Brandt, et al. v. California State Automobile Association, et al.
United States District Court, District of Nevada, Case No. 3:03-CV-00310
> This wage and hour class action was brought on behalf of all Nevada claims adjusters working for CSAA between January 1997 and the present. This lawsuit alleged that, during these years, CSAA mis-classified these workers as exempt "administrators" and refused to pay them for overtime hours worked and fraudulently promised to pay them overtime compensation upon settlement of a companion case (*Thomas v. Cal. State Auto. Assoc.*, below). We served as co-counsel, *pro hac vice*, for the proposed class of employees in this matter.

Bulow, et al. v. Wells Fargo Investments, LLC
United States District Court, Northern District of California, Case No. 3:06-CV-7924
> This matter was filed as a nation-wide class action against Wells Fargo Investments, on behalf of its Financial Consultants to recover overtime pay, compensation for denied meal and rest periods (California only) and reimbursement for business related service and supply expenses (California only). This matter settled for $6.9 million.

Cano, et al. v. United Parcel Service, Inc.
Alameda County Superior Court Case No. RG03089266
> This wage and hour complex litigation matter involved the alleged mis-classification of overtime non-exempt Operations Management Specialists, Operational Excellence Specialists and/or Industrial Engineering Specialist at this company's California facilities. This action settled in 2004 for $4.5 million.

Chaidez, et al. v. Odwalla, Inc.
San Mateo County Superior Court Case No. CIV430598
> This wage and hour complex litigation matter involved the alleged misclassification of overtime non-exempt California Route Sales Representatives. We served as primary counsel for this proposed class of employees. This action settled for $2.2 million.

Chang, et al. v. Tower Mart
Sacramento County Superior Court, Case No. 34-2009-00044408-CU-OE-GDS
> Scott Cole & Associates, APC filed this lawsuit, alleging violations of California law for failure to pay overtime to Tower Mart's California store managers. It is also alleged that the company denied these managers meal and rest periods. This matter settled for $1.5 million.

Chatellier, et al. v. The White House/Black Market Stores Inc.
Santa Clara County Superior Court Case No. 1-04-CV-030489
> This lawsuit involved claims against this retail clothing store for violations of California law for failure to pay overtime to its Store Managers as well as for the alleged denial of

meal and rest periods. The settlement achieved in this action represented one of the highest per-workweek wage and hour settlements at the time.

Christman, et al. v. Good Guys, Inc.
San Diego County Superior Court Case No. GIS21939
> This legal action alleged violations of California law for unpaid overtime wages and for failure to provide rest and meal periods on behalf of multiple employee classifications. This action settled for up to $1.05 million.

CKE Overtime Cases
Los Angeles County Superior Court Case No. BC283274 (JCCP No. 4274)
> This class action was brought against fast food chain Carl's Jr. for violations of California's overtime laws on behalf of the company's California restaurant chain Managers. The coordinated litigation settled for up to $9.0 million in 2004.

Dailey, et al. v. Performant Financial Corporation
Alameda County Superior Court Case No. RG10493644
> Scott Cole & Associates, APC filed this class action in 2010, on behalf of the company's non-exempt employees seeking wages for alleged violations of California law for unpaid overtime and denial of meal and/or rest periods.  After defeating the defendant's summary judgment motion and filing our motion for class certification, we settled this case for $1.2 million.

Davis, et al. v. American Commercial Security Service, Inc.
San Francisco County Superior Court Case No. CGC-05-444421
(Consolidated with Los Angeles County Superior Court Case No. BC336416)
> Scott Cole & Associates, APC filed a claim against American Commercial Security Services, Inc. for violations of California law for denial of meal and rest periods toward security guards. The action achieved class certification status in 2009.  Following summary judgment proceedings, a judgment of over **$89 million** was entered against the defendant along with a successful motion for $26.7 million in attorney fees.  The judgment is on appeal.

Davis, et al. v. Universal Protection Security Systems, Inc., et al.
San Francisco County Superior Court Case No. CGC-09-495528
> Scott Cole & Associates, APC filed a claim in 2009 against Universal Protection Security Systems, Inc. for violations of California law for denial of meal and rest periods toward security guards.  This case settled in 2013 for $4 million.

DeNeveu, et al. v. Ross Stores, Inc.
Alameda County Superior Court Case No. RG10504571
> Scott Cole & Associates, APC filed this class action in December 2009, alleging violations of California law for failure to pay overtime to Ross's salaried Store Manager positions. It was also alleged that the company denied these managers rest and meal periods.

Despres (Cornn), et al. v. United Parcel Service, Inc.

United States District Court, Northern District of California, Case No. 3:03-CV-02001

>This wage and hour class action litigation was brought to remedy violations of meal and rest period regulations on behalf of the company's California ground delivery drivers. We served as co-counsel for the certified class of drivers. This action settled for **$87 million**, an unprecedented settlement amount for such claims.

Escow-Fulton, et al. v. Sports and Fitness Clubs of America dba 24 Hour Fitness USA, Inc.

San Diego County Superior Court Case No. GIC881669

(Consolidated with Case No. GIC873193)

>Scott Cole & Associates, APC filed this class action against this health and fitness company on behalf of the company's California "Group X" Instructors to recover regular and overtime pay, related penalties and un-reimbursed expenses. The action achieved class certification status in 2009. In 2011, the parties agreed to settle the class' expense reimbursement claims for $10 million. The parties then filed cross-motions for summary adjudication and on August 2, 2011, the court issued an Order finding 24 Hour Fitness' session rate compensation scheme to be an invalid piece rate. The parties then agreed to settle the class' unpaid wage claims for $9 million, and the summary adjudication order was vacated pursuant to settlement.

Fakhro, et al. v. Turner's Outdoors, Inc.

Los Angeles County Superior Court Case No. BC388874

>This lawsuit alleges violations of California law for failure to pay overtime to the company's California Store Managers. It was also alleged that the company denied these managers rest and meal periods. The Court granted final approval to a classwide settlement in 2009.

Gilhuly v. Kmart Corporation

United States District Court, Northern District of California, Case No. 4:10-CV-0360

>Scott Cole & Associates, APC filed this class action in December 2009, alleging violations of California law for failure to pay wages, including unpaid overtime compensation, to Kmart's Sales Coach, Operations Manager and Merchandise Manager positions. It was also alleged that the company denied these managers rest and meal periods.

Grindstaff, et al. v. Kohl's Department Stores, Inc.

Los Angeles County Superior Court Case No. BC341954

(Consolidated with Case No. BC327426)

>This action alleged violations of California law for failure to pay overtime to assistant store managers. It was also alleged that the company denied its assistant store managers rest and meal periods. This action settled in 2008 for $6 million.

Grootboom v. Security Industry Specialists, Inc.

Alameda County Superior Court Case No. RG09435440

>This class action was filed on behalf of the company's California-based security guards to recover unpaid wages and compensation for missed meal and rest periods in violation of California law. This action settled in 2009 for $775,000.

Holm, et al. v. Borders, Inc.
San Francisco County Superior Court Case No. CGC-05-445357
     Scott Cole & Associates, APC served as counsel for the proposed class against this retail chain for violation of California law for failure to pay Inventory and/or Sales Managers overtime wages. It was also alleged that the proposed class had been denied rest and meal periods. This matter settled in 2007 for $3.5 million.

Ingraham v. Orchard Supply Hardware, Corp.
San Mateo County Superior Court Case No. 457004
     Scott Cole & Associates, APC filed this matter on behalf of all company employees who were forced to maintain, as a condition of employment, a company-issued uniform. This class action also seeks recovery of unpaid wages, compensation for the improper denial of overtime pay and for missed meal and rest periods. This matter resolved in 2008 on behalf of approximately 22,000 class members for $1.75 million.

Kelly, et al. v. Walgreen Co.
San Francisco County Superior Court Case No. CGC-07-464347
     Scott Cole & Associates, APC filed an action against this retailer on behalf of employees who were allegedly subject to security searches for which they were not compensated, in violation of California law. Also alleged was that the company denied these employees rest and meal periods. The action settled for $7.5 million with SCA serving in the lead role.

Kullar v. Foot Locker, Inc.
San Francisco County Superior Court Case No. CGC-05-447044
     This action was brought against this sporting retailer on behalf of California employees who were allegedly forced to purchase shoes of a distinctive color or design as a term and condition of their employment and in violation of state law. The Court approved a $2.0 million settlement that resolved this action. After two separate appeals by an objector challenging the settlement, the Court of Appeal affirmed the trial court's judgment.

Kurihara v. Best Buy Co., Inc.
United States District Court, Northern District of California, Case No. 3:06-CV-01884
     We filed an action against this retailer on behalf of employees who were allegedly subject to security searches for which they were not compensated, in violation of California law. Also alleged was that the company denied these employees rest and meal periods. In 2007, the Court certified a class of over 16,000 Best Buy employees. The action settled for $5 million in 2010.

Lyons v. Elephant Bar Restaurant
Alameda County Superior Court Case No. RG08422299
     Scott Cole & Associates, APC filed an action against this restaurant chain challenging violations of California law for denial of meal and rest periods on behalf of the restaurant's hourly, non-exempt employees.

Mambuki, et al. v. Securitas Security Services USA, Inc.
Santa Clara County Superior Court Case No. 1-05-CV-047499 (JCCP No. 4460)

Scott Cole & Associates, APC filed a claim against this defendant for violations of
California law (for denial of meal and rest periods) on behalf of the company's
California-based security guards. This coordinated proceeding settled in 2008 for $15
million.

McFann, et al. v. Volt Telecommunications Group, Inc.
Riverside County Superior Court Case No. RIC475410
(Los Angeles County Superior Court JCCP No. 4533)

Scott Cole & Associates, APC filed this action on behalf of company field technicians to
recover reimbursement for business-related expenses and for unpaid wages. The Court
approved an Arbitration Award entered pursuant to a $3.45 million class wide settlement
in 2009.

Menchykv. Beverages & More, Inc.
Alameda County Superior Court Case No. RG05196918

Scott Cole & Associates, APC filed this action for violations of California law for unpaid
overtime wages and for failure to provide meal and rest periods. Although a small
putative class (98 class members), it settled for $1.2 million, representing one of the
highest per-workweek settlements in California at the time.

Moore v. Albertsons Inc.
United States District Court, Northern District of California, Case No. 3:04-CV-03731

Scott Cole & Associates, APC filed this action for violations of California's overtime
laws on behalf of the company's California Drug Managers. This action settled for $2.35
million, again representing one of highest per-workweek settlements in the state at the
time.

Nunez v. AC Square, Inc., et al.
San Mateo County Superior Court Case No. CIV479622
(Consolidated with Case Nos. 464144 and 473571)

Scott Cole & Associates, APC filed this class action on behalf of all California
Technicians employed by AC Square (during the applicable claims period) to recover
unpaid wages including overtime pay, meal and rest period compensation, related
penalties and un-reimbursed expenses. This action settled for $800,000.

O'Brien v. Edward D. Jones & Co., LP.
United States District Court, Northern District of Ohio, Case No. 1:08-CV-00529

We filed a nation-wide (and New York State) class action against this financial securities
company on behalf of the company's financial services representatives to recover
overtime pay and related penalties. We served on a Lead Counsel Committee in this
action, which settled in 2007 for $19 million.

O'Hara, et al. v. Factory 2-U Stores, Inc.
Alameda County Superior Court Case No. 834123-5

This class action, filed in 2000, alleged mis-classification of Factory 2-U's California
Store Managers and Assistant Store Managers as exempt from overtime pay. In 2001, the
Alameda County Superior Court certified two sub-classes (Managers and Assistant

Managers) and, in 2002, granted final approval to a settlement of the action for $2 million.

Ramirez, et al. v. The Coca Cola Company, et al.
San Bernardino County Superior Court Case No. RCV 056388 (JCCP No. 4280)
> This is one of two companion actions we prosecuted against this soft drink giant for violations of California's overtime laws. This action was brought on behalf of over 4,000 hourly workers at the company's bottling, distribution and sales centers who were allegedly forced to work "off-the-clock" for Coca Cola and/or whose time records were ordered modified by the company. This well-publicized action settled for $12 million and on very favorable terms for the claimants. We filed the first action on these issues and ultimately worked with co-counsel for the proposed class of workers.

Rowe, et al v. California Commerce Casino, Inc.
Los Angeles County Superior Court Case No. BC321283
(Consolidated with Case Nos. BC288079 and BC320171)
> Scott Cole & Associates, APC filed a claim against this casino for violations of California law for failure to pay overtime to their dealers. Additionally, it was alleged that the casino demanded that its dealers pay a portion of their wages into a "tip pool" from which the supervisors (who had authority over the dealers) drew extra income. We and our co-counsel have settled the action, in part, and obtained certification of the remaining claims following an adversarial proceeding.

Schweinsburg v. Paragon Systems, Inc.
United States District Court, Central District of California, Case No. 2:09-CV-08139
> Scott Cole & Associates, APC filed a claim in 2009 against Paragon Systems, Inc., for violations of California law for denial of meal and rest periods toward non-exempt security guards. This case settled for the policy limit of $885,410.

Thomas, et al. v. Cal. State Auto. Assoc., et al.
Alameda County Superior Court Case No. CH217752
> Scott Cole & Associates, APC filed this class action litigation on behalf of all California claims adjusters working for CSAA after mid-January 1997. This lawsuit alleged that, during those years, CSAA mis-classified these workers as exempt "administrators" and refused to pay them for overtime hours worked. This lawsuit settled for $8 million. We commenced this action and served as co-counsel for the nearly 1,200 claims representatives.

Tierno v. Rite Aid Corporation
United States District Court, Northern District of California, Case No. 3:05-CV-02520
> Scott Cole & Associates, APC filed this action against Rite Aid Corporation on behalf of its salaried California Store Managers. It was alleged that defendant, purportedly the nation's third largest drug store chain, failed to pay overtime to those workers and denied them their meal and rest periods. In 2006, the federal court certified the class in this action, and approved our $6.9 million non-reversionary settlement in 2009.

<u>Torres, et al. v. ABC Security Services, Inc.</u>
Alameda County Superior Court Case No. RG04158744
> Scott Cole & Associates, APC filed this litigation, alleging violations of Cali- fornia law for denial of meal and rest periods on behalf of the company's security guards. This action received class certification status in 2006 and settled for $495,000.

**Other Mass and/or Complex Litigation Experience:**

<u>In Re Tosco SFR Litigation</u>
Contra Costa County Superior Court Case No. C97-01637
> During incidents on April 16, 1997 and, again, on January 7, 1998, the Tosco (old Unocal) Refinery in Rodeo, California released toxic chemicals airborne into the environment. These harmful substances traveled airborne into neighboring communities, seriously affecting the health of citizens and local workers. Our firm served as Lead Counsel in this complex litigation and represented thousands of members of the community in that role. We settled this matter for $2.5 million, the funds from which were disbursed to over 2,000 claimants who participated in the settlement.

<u>In Re Unocal Refinery Litigation</u>
Contra Costa County Superior Court Case No. C94-04141
> In response to Unocal's 16-day airborne release of chemicals over the County of Contra Costa in 1994, we filed a class action against the corporation on behalf of thousands of victims and thereafter served as one of a handful of firms (among dozens of law firms of record) on the Plaintiffs' Steering Committee. After hard-fought litigation, the matter eventually settled for $80 million.

<u>In Re Westley Tire Fire Litigation</u>
Santa Clara County Superior Court Case No. CV 801282
> On September 22, 1999, lightning struck and ignited a pile of approximately 7 million illegally stored waste tires in Westley, California, a town about 70 miles east of San Francisco. Over the subsequent five weeks, the fire spewed smoke and carcinogens over a large portion of the State of California. Our firm served as the (sole) Lead and (shared) Liaison Counsel over a Plaintiffs' Steering/Management Committee in the consolidated actions against the owners and operators of this tire pile and related entities. These cases sought compensation for those individuals and businesses suffering personal and/or property damages as a result of these toxic substances and the fire's fall-out. In 2001, we reached a settlement with one defendant (CMS Generation Co.) for $9 million. In 2003, the Court granted final approval of the settlement. In 2005, two of the remaining defendants settled for an aggregate amount of roughly $1.4 million.

<u>Onyeige, et al. v. Union Telecard Alliance, LLC</u>
U.S.D.C. Northern District of California, Case No. 3:05-CV-03971
(U.S.D.C., District of New Jersey, MDL No. 1550)
> Scott Cole & Associates, APC filed an action against Union Telecard Alliance, LLC alleging negligent misrepresentation and for deceptive advertising practices related to the marketing of its pre-paid telephone calling cards. This action settled for approximately

$22 million.

Witriol, et al. v. LexisNexis., et al.
U.S.D.C., Southern District of California, Case No. 3:06-CV-02360
　　　Scott Cole & Associates, APC filed an action against this company for its allegedly-
　　　unlawful disclosure of private credit, financial and/or other personal information. This
　　　action settled for up to $2.8 million.


**Notable Appellate Experience:**

SCA has substantial appellate experience, highlighted by the examples below.  This is only a
short list. For unreported cases/opinions (not listed here), please contact out firm.

Baddie v. Berkeley Farms, Inc. (9th Cir. 1995) 64 F.3d 487
　　　Case No. 93-17187


Dunbar v. Albertson's, Inc. (2006) 141 Cal.App.4th 1422
　　　First Dist., Division 1, Case No., A111153


Kullar v. Foot Locker Retail, Inc. (2008) 168 Cal.App.4th 116
　　　Case No. A119697


O'Hara v. Factory 2-U Stores, Inc. (2003) Not Reported in Cal.Rptr.3d, 2003 WL 22451991
　　　First District, Division 4, Case No. A101452


Taylor v. Park Place Asset Management, et al. (1999)
　　　First Dist., Division 5, Case No. A086407


Whiteway v. Fedex Kinko's Office and Print Services (9th Cir. 2009) 319 Fed.Appx. 688
　　　Case No. 07-16696


Scott Cole & Associates, APC // Class Action Attorneys
1970 Broadway, Ninth Floor // Oakland, California 94612
Telephone: (510) 891-9800 // Facsimile: (510) 891-7030 // Web:  www.scalaw.com